## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

BRIGHT DATA LTD.

        Plaintiff,

    v.

NETNUT LTD.

        Defendant.

Case No.

**JURY TRIAL DEMANDED**

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff, Bright Data Ltd. ("Bright Data" or "Plaintiff") brings this action under the patent laws of the United States, Title 35 of the United States Code, and makes the following allegations against NetNut Ltd ("NetNut"):

### THE PARTIES

1.      Plaintiff Bright Data is an Israeli company having a principal place of business at 3 Hamahshev St., Netanya 42507, ISRAEL.

2.      Upon information and belief, NetNut is an Israeli company located at HaArba'a St 30, Tel Aviv, Israel.

### JURISDICTION AND VENUE

3.      This is an action for patent infringement under the patent laws of the United States of America, 35 U.S.C. § 1, et seq.

4.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331, 1338, and 1367.  NetNut has not contested subject matter jurisdiction of this Court, and accepted service of process in the First Action (*Luminati Networks Ltd. v. NetNut Ltd.*, No. 20-cv-188 (E.D. Tex)).

5.      This Court has personal jurisdiction over NetNut because it, directly or through its subsidiaries, divisions, groups, or distributors, has sufficient minimum contacts with this forum as a result of business conducted within the State of Texas, and/or pursuant to Fed. R. Civ. P. 4(k)(2). On information and belief, NetNut transacts substantial business in the State of Texas, directly or through agents, including upon information and belief: (i) at least a portion of the infringement alleged herein, and (ii) regularly does or solicits business in Texas, engages in other persistent courses of conduct, maintains continuous and systematic contacts within this Judicial District, purposefully avails itself of the privilege of doing business in Texas, and/or derives substantial revenue from services provided in Texas.  For example, NetNut utilizes software, which is the subject of the infringement alleged herein, that is embedded in a number of software applications which are placed into the stream of commerce with the knowledge, understanding, and/or intention that they be downloaded and executed by devices located in the State of Texas, as well as this Judicial District. Upon information and belief, the software effectively turns the devices on which it is installed into peer-to-peer ("P2P") residential proxy devices that operate as part of NetNut's "Rotating Residential Proxies" service under NetNut's control.  The Accused Services ("Accused Services") comprise NetNut's "Rotating Residential Proxies" and any substantially similar service including services that utilize proxy IP addresses from client devices. The Accused Services are offered, operated and provided by NetNut.  NetNut has previously been subject to jurisdiction in this Court by the same similar conduct in the First Action.

# **Rotating Residential IP** Features

 **Rotating Proxies**

NetNut rotates proxies per each browser session by default and can be seamlessly integrated into any browser.

 **Fastest in the Market**

Gather data and scale faster using a dynamic P2P proxy network with 24/7 IP availability and virtually 0% fail rates.

 **Gather any Data**

Whether your use case is SEO, Social, ad verification, price comparison or brand protection, NetNut can handle any target.

https://netnut.io/rotating-residential-proxies/

## Worldwide **proxy coverage**

**NetNut's 20M+ Residential IPs** are sourced from real end-user devices from across the globe, allowing you to **access any web page** from any country in the world.

**Access millions of IPs** and utilize a dynamic Residential Proxy Network, combining **ISP and P2P proxy IP networks**.

This unique infrastructure eliminates any downtime, offering **high scalability** and guarantees maximum anonymity.

https://netnut.io/rotating-residential-proxies/

NetNut is the **fastest** residential proxy provider, offering **real and active** residential IPs for all web scraping and web data extraction activities.

By utilizing a dynamic P2P network and delivering optimized IP pools, NetNut is the ultimate solution for scraping and collecting web data at higher speed and at lower $/GB rates.

https://netnut.io/proxy-use-cases/proxies-for-web-data-extraction/?link=https%3A%2F%2Fnetnut.io%2Frotating-residential-proxies%2F

6.      Upon information and belief, residential proxy devices with the embedded software are located throughout the United States, including Texas.  NetNut touts the use of millions of rotating residential proxy devices including in the United States.  NetNut also touts the ability to

select IP addresses by location based on city and state in the United States.  Upon information and belief, this includes cities in Texas.

## Worldwide **proxy coverage**

**NetNut's 20M+ Residential IPs** are sourced from real end-user devices from across the globe, allowing you to **access any web page** from any country in the world.

**Access millions of IPs** and utilize a dynamic Residential Proxy Network, combining **ISP and P2P proxy IP networks**.

This unique infrastructure eliminates any downtime, offering **high scalability** and guarantees maximum anonymity.

Exhibit C, https://netnut.io/rotating-residential-proxies/

## How can I select an IP per country?

The country codes have the standard ISO coding. To select a specific country please change the proxy connection string for example:
IP:PORT:USERNAME-(proxy-type=dc/res/stc)-**COUNTRY**:PASSWORD.
More information on our available countries can be found under the "Available Countries" tab on the left-side toolbar in your user dashboard

https://netnut.io/faq/#faq

## Can I select an IP per city?

Yes, NetNut offers US city & state proxy selection.

https://netnut.io/faq/#faq

7.      Upon information and belief, NetNut is subject to this Court's jurisdiction because it committed patent infringement in the State of Texas and this jurisdiction.  This Court has general jurisdiction over NetNut due to its continuous and systematic contacts with the State of Texas and this jurisdiction.

8.      Following *Brunette Machine Works v. Kockum Industries, Inc.*, 406 U.S. 706 1972), venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400(b) at least because, upon information and belief, NetNut is a foreign entity.

## FACTUAL ALLEGATIONS

9.      Derry Shribman and Ofer Vilenski are the sole inventors of a number of patents, including U.S. Patent Nos. 10,257,319 (Exhibit A, "'319 Patent") issued on November 5, 2019, and U.S. Patent No. US 10,484,510 (Exhibit B, "'510 Patent") (collectively the "Asserted Patents") issued on November 19, 2019.  10.   The '319 Patent and '510 Patent are divisionals sharing the same specification and are both titled "System Providing Faster and More Efficient Data Communication."  Bright Data identifies its patents including on its website at https://Bright Data.io/patent-marking#system-and-method-for-streaming-content-from-multiple-servers. Bright Data is the assignee and sole owner of the Asserted Patents.

10.     Bright Data, formerly known as Luminati Networks Ltd. ("Luminati") and Hola Networks Ltd. ("Hola"), provides a cloud service connecting tens of millions of devices over the Internet through a proxy-based network.  Each participating device allows the service to utilize a fraction of that device's idle time for the network.  Bright Data utilizes this network to provide proxy-based services to its customers.

11.     Since 2014, Bright Data has offered proxy-based services relying on its "Residential Proxy Network" that practice one or more claims of the Asserted Patents.  Bright

Data permits its business customers to utilize its residential proxy network to gather data over the Internet using residential proxy devices from various localities as required by the customers. Because each of these residential proxy devices has its own residential IP address, web servers receiving requests from these proxy devices do not recognize such requests as originating from the actual user making the request. Instead, the server identifies the request as coming from a residential device based upon the residential IP address of the proxy device. These residential proxy devices provide businesses with a number of advantages. For example, online retailers may anonymously use these residential proxy devices to gather information from web servers (such as for comparative pricing), businesses may utilize these devices to test their web sites from any city in the world, and cyber security firms may employ these devices to test web sites for malicious code.

12.     Prior to and separate from the technology at issue in this case, Hola provided a virtual private network ("VPN") service called HolaVPN.

13.     On June 11, 2020, Bright Data filed the First Action against NetNut for infringement of U.S. Patent Nos. 10,484,511 and 10,637,968 (the "Related Patents"). *Luminati Networks Ltd. v. NetNut Ltd.*, No. 20-cv-188-JRG-RSP, Dkt. No. 1 (E.D. Tex. June 11, 2020). NetNut has filed *ex parte* reexamination requests with the PTO regarding the patents from the First Action. *Id.*, at Dkt. Nos. 48, 57. Fact discovery closed in the First Action on June 14, 2021. *Id.*, at Dkt. No. 41.

14.     The Related Patents asserted in the First Action against NetNut share the same specification as the '319 and '510 Patents asserted in this case. Upon information and belief, NetNut's officers, including its CEO Barak Avitbul, are keenly aware of the entire family of patents sharing the specification of the Related Patents, including the Asserted Patents. Upon

information and belief, NetNut officers are also aware of Bright Data's patent marking webpage, on which the Asserted Patents are listed.  Upon information and belief, NetNut is aware of other lawsuits that have been filed by Plaintiff alleging infringement of the asserted patents by peer-to-peer "Rotating Residential Proxy" services like the Accused Services.  NetNut has had knowledge of the Asserted Patents and infringement since before the introduction of the Accused Services, and has willfully infringed the Asserted Patents. Upon information and belief, NetNut willfully concealed the development and release of its rotating residential proxy service in the United States in order to avoid enforcement of the Asserted Patents.

15.     Upon information and belief, "NetNut" is the brand name for Defendant's proxy business generally, including but not limited to the Accused Services.  Upon information and belief, this includes a peer-to-peer residential proxy network with over twenty-million residential devices, each with its own IP address.



https://netnut.io/

16.     NetNut touts their residential proxy service as including "US city and state proxy selection."  *See* https://netnut.io/faq/#faq.  Upon information and belief, the rotating residential proxies have IP addresses that are  "generated through real end-users devices."  Exhibit C, https://netnut.io/rotating-residential-proxies/?link=https%3A%2F%2Fnetnut.io%2F.          Upon

information and belief, this residential proxy network is used to access content over the Internet, wherein that content is identified by a content identifier.  Upon information and belief, NetNut's peer-to-peer residential proxy network supports Accused Services, as shown in the images above. Upon information and belief, these residential proxies include residential proxy devices located in Texas.



Exhibit C, https://netnut.io/rotating-residential-proxies/?link=https%3A%2F%2Fnetnut.io%2F.

17.     Upon information and belief, the NetNut rotating residential proxy network of the Accused Services is based upon numerous consumer devices or proxy client devices, such as laptops and cell phones, each of which is a client device identifiable over the Internet by an identifier, such as (but not limited to) an IP address.  Upon information and belief, these client devices become part of the network through the execution of software, such as by implementation of a software development kit ("SDK") that is embedded in software applications downloaded on the client devices.  Upon information and belief, these proxy client devices are available to receive requests submitted through the Accused Services and send the requests to a target web server, as

well as sending any content received from the target web server to NetNut's requesting customer via an intermediary server of the Accused Services.

18.     Upon information and belief, NetNut provides instructions on how to use the Accused Services through different platforms as well as its own chrome extension application.

## Chrome Extension

Unlock the web using NetNut Chrome Extension without having to go through proxy integration. Easily target any country and choose static or rotating residential proxies right from your browser.

https://netnut.io/rotating-residential-proxies/

INTEGRATIONS

# How to Configure Proxy Settings on ParseHub

Easy integration guide to configure your ParseHub proxy settings with NetNut ...

READ MORE →

see e.g.
https://netnut.io/integrations/?link=https%3A%2F%2Fnetnut.io%2F&link=https%3A%2F%2Fnetnut.io%2Frotating-residential-proxies%2F%3Flink%3Dhttps%253A%252F%252Fnetnut.io%252F

19.     Upon information and belief, NetNut controls client devices upon which NetNut's residential proxy network operates through SDK(s) installed on third-party client devices via NetNut's partner(s).

20.     NetNut provides a residential proxy service through the Accused Services allowing a NetNut customer to utilize peer-to-peer residential proxy devices in fetching content over the Internet.  Upon information and belief, SDKs supporting the Accused Services are installed on residential devices causing the devices to perform the steps of at least claims 1, 17, 24, 25 and 27 of the '319 Patent, and claims 1, 8, 13, 15, 16, 18, 20, 22, and 23 of the '510 Patent.  This embedded

9

code is under the control of NetNut, either directly or via NetNut's contractual relationship with its partners.  As this code is under the control of NetNut, NetNut causes each of these steps to also be performed.   In addition, given NetNut's contractual relationship with its customers, the customers utilization of the Accused Services also causes each of the claimed steps to be performed.

21.     Specifically, upon information and belief, NetNut's rotating residential proxy network comprises numerous proxy devices, each of which is a client device such as a laptop or smartphone identifiable by its own identifier, such as (but not limited to) an IP address, with an SDK operating on that device.  Upon information and belief, the proxy devices of the Accused Services send their identifiers to a server of the Accused Services, following the proxy client device connecting to the Internet, and the proxy client devices and server of the Accused Services communicate periodically thereafter.

22.     Upon information and belief, the proxy client device is responsive to receiving a request from the server of the Accused Services.  Upon information and belief, having received a request from a server of the Accused Services, the proxy client device is used to fetch content identified by a content identifier over the Internet from a web server, which stores the content. Upon information and belief, the proxy client device fetches content by (a) receiving a content identifier from the server of the Accused Services; (b) sending the content identifier to the web server; (c) receiving the content from the web server in response to the sending of the content identifier to the web server; and (d) sending the content to the server of the Accused Services. Upon information and belief, the above steps are executed including, for example, on the proxy client device by NetNut's software installed on that device, which can be downloaded on that proxy client device from servers on the Internet.

23.     Upon information and belief, the content may include a part or whole files, text, numbers, audio, voice, multimedia, video, images, music, computer program, or a part or a whole of a web-site page.   Upon information and belief, the content may be identified by a uniform resource locator.

24.     Upon information and belief, web servers are or include Hypertext Transfer Protocol (HTTP) servers that respond to HTTP requests including both normal HTTP and HTTPS requests, and the proxy device may send an HTTP request comprising the content identifier to the web server.   Further, upon information and belief, the proxy device may establish Transmission Control Protocol (TCP) connections with the server of the Accused Services and web server, with the content identifier and content sent over the established TCP connections to and from the proxy device.   Similarly, upon information and belief, the proxy device may establish a TCP connection with the web server.

25.     Upon information and belief, each proxy device stores, operates or uses a client operating system including but not limited to a mobile operating system such as Android version 2.2, 2.3, 4.0, 4.2, 4.4, and Microsoft Windows Phone version 7, 8, and 9.

26.     The use of the residential proxy network permits anonymity to NetNut customers, such as for engaging in activities like as web crawling, without disclosing its identity to the targeted web sites.

## COUNT I
### (Infringement of the '319 Patent)

27.     Bright Data repeats and re-alleges the allegations contained in paragraphs 1–26 of this Complaint as if fully set forth herein.

28.     The '319 Patent entitled "System Providing Faster and More Efficient Data Communication" was duly and legally issued by the U.S. Patent and Trademark Office on April

9, 2019, from Application No. 15/957,945 filed on April 20, 2018, which is a continuation of application No. 14/025,109, which is a division of application No. 12/836,059, now Pat. No. 8,560,604, all of which claim priority to provisional application 61/249,624 filed on October 8, 2009.  A true and accurate copy of the '319 Patent is attached hereto as Exhibit A.

29.     Each and every claim of the '319 Patent is valid and enforceable, and each enjoys a statutory presumption of validity under 35 U.S.C. § 282.

30.     Bright Data is the sole owner of the '319 Patent and has rights to past damages.

31.     Claim 1 of the '319 Patent recites:

A method for use with a first client device, for use with a first server that comprises a web server that is a Hypertext Transfer Protocol (HTTP) server that responds to HTTP requests, the first server stores a first content identified by a first content identifier, and for use with a second server, the method by the first client device comprising:

receiving, from the second server, the first content identifier;

sending, to the first server over the Internet, a Hypertext Transfer Protocol (HTTP) request that comprises the first content identifier;

receiving, the first content from the first server over the Internet in response to the sending of the first content identifier; and

sending, the first content by the first client device to the second server, in response to the receiving of the first content identifier.

32.     As described in the above paragraphs, upon information and belief, the Accused Services comprise numerous proxy client devices each of which is a client device ("first client device") and a server of the Accused Services ("second server"). An HTTP web server that responds to HTTP requests ("first server") stores content ("first content") identified by an identifier ("first content identifier"), such as for example an HTTP web server storing a webpage identified by a URL address.   As described above, a first client device (a) receives a first content identifier from the second server of the Accused Services; (b) sends an HTTP request comprising the first

content identifier to the first server; (c) receives the first content from the first server over the Internet in response to the sending of the first content identifier; and (d) sends the first content to the second server of the Accused Services in response to receiving the first content identifier.

33.     The '319 Patent includes a number of dependent claims.  In addition to practicing the steps of independent claim 1, upon information and belief as discussed above, NetNut and others using NetNut's Accused Services also practice at least the steps of the following dependent claims:

Claim 17: The method according to claim 1, further comprising periodically communicating between the second server and the first client device.

Claim 24: The method according to claim 1, further comprising establishing, by the first client device, a Transmission Control Protocol (TCP) connection with the second server using TCP/IP protocol.

Claim 25:  The method according to claim 1, wherein the first or second server is a Transmission Control Protocol/Internet Protocol (TCP/IP) server, wherein the first client device communicates over the Internet with the first or second server based on, or according to, using TCP/IP protocol or connection.

Claim 27:  The method according to claim 1, wherein the steps are sequentially executed.

34.     NetNut has actual notice of the '319 Patent since before it developed and released the Accused Services and knows at least from this Complaint, in addition to the means set forth above, that implementation of the Accused Services using residential proxy devices in the United States would infringe at least claims 1, 17, 24, 25, and 27 of the '319 Patent.

35.     Upon information and belief NetNut sold, offered to sell, used, tested, and imported and continue to sell, offer to sell, use, test, and import the Accused Services into the United States.

NetNut provides the rotating residential proxy service of the Accused Services to their customers with the knowledge and intent that the customers' implementation of the service using residential proxies located in the U.S. would infringe the '319 Patent.

36.     NetNut has been and is now infringing at least directly, indirectly and/or contributorily, one or more claims including at least claims 1, 17, 24, 25 and 27 of the '319 Patent, both literally and/or under the doctrine of equivalents, by implementing the Accused Services using residential proxy devices located in the United States without authority and/or license from Bright Data and are liable to Bright Data under 35 U.S.C. § 271 et seq., including but not limited to under Sections 271(a), (b), (c) and/or (g).  On information and belief, NetNut has been aware of the Asserted Patents prior to the development and release of the Accused Services yet has continued to infringe and cause proxies in the United States under NetNut's control to infringe claims of the Asserted Patents and has induced infringement.  On further information and belief, NetNut has developed, used, offered to sell and/or sold within the United States and imported into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use.  On further information and belief, NetNut also imports and sells as well as causes others to use within the United States a product which is made by a process patented in the United States whereby the importation, offer to sell, sale, and/or use of the product occurs during the term of such process patent.  Such products may include for example, the set of results sent to customers in the United States as created and assembled by the patented methods of the Asserted Patents.

37.     As a result of NetNut's infringement of the '319 Patent, Bright Data has suffered and continues to suffer damages.  Thus, Bright Data is entitled to recover from NetNut the damages Bright Data sustained as a result of NetNut's wrongful and infringing acts in an amount no less than its lost profits and/or a reasonable royalty, together with interest and costs fixed by this Court together with increased damages up to three times under 35 U.S.C. § 284.

38.     Bright Data has suffered damage because of the infringing activities of NetNut, its officers, agents, servants, employees, associates, partners, and other persons who are in active concert or participation therewith, and Bright Data will continue to suffer irreparable harm for which there is no adequate remedy at law unless NetNut's infringing activities are preliminarily and permanently enjoined by this Court.  Bright Data practices the Asserted Patents and, on information and belief, practicing the Asserted Patents is required for a competitive offering of residential proxy services, a technology and market that Bright Data created.  Non-exclusive examples of such damage include loss of market share, lowered prices and the inability of Bright Data to obtain the revenues and profits it would have been able to obtain but for the infringement, lost sales in other services when customers did not purchase residential proxy services from Laminate as a result of the infringement, loss of convoyed sales of other related services that Bright Data would have sold but for the infringement, and harm to Bright Data's reputation as a result of NetNut's lower quality and less protected offerings damaging the reputation and perception of the residential proxy service market that relies on the technology of the Asserted Patents.

39.     Upon information and belief, NetNut's infringement of the '319 Patent is and continues to be deliberate and willful because NetNut was and is on notice of the '319 Patent before it developed and introduced the Accused Services in the United States, yet NetNut continues

to infringe the '319 Patent.  This case should be deemed an exceptional case under 35 U.S.C. §

285, and if so, Bright Data is entitled to recover its attorneys' fees.

**COUNT II**
(Infringement of the '510 Patent)

40.     Bright Data repeats and re-alleges the allegations contained in paragraphs 1–39 of

this Complaint as if fully set forth herein.

41.     The '510 Patent entitled "System Providing Faster and More Efficient Data

Communication" was duly and legally issued by the U.S. Patent and Trademark Office on

November 19, 2019, from Application No. 16/278,107 filed on February 17, 2019, a continuation

of Application No. 15/957,945, now Pat. No. 10,257,319, which is a continuation of application

No. 14/025,109, now Pat. No. 10,069,936, which is a divisional of application No. 12/836,059,

now Pat. No. 8,560,604, all of which claim priority to provisional application 61/249,624 filed on

October 8, 2009. A true and accurate copy of the '510 Patent is attached hereto as Exhibit B.

42.     This Court previously found Claim 13 of the '510 Patent indefinite, though the

determination is subject to appellate review.  Otherwise, each and every claim of the '510 Patent

is valid and enforceable, and each enjoys a statutory presumption of validity under 35 U.S.C. §

282.

43.     Bright Data is the sole owner of the '510 Patent and has rights to past damages.

44.     Claim 1 of the '510 Patent recites:

A method for use with a web server that responds to Hypertext Transfer Protocol
(HTTP) requests and stores a first content identified by a first content identifier, the
method by a first client device comprising:

establishing a Transmission Control Protocol (TCP) connection with a second
        server;

sending, to the web server over an Internet, the first content identifier;

16

receiving, the first content from the web server over the Internet in response to the sending of the first content identifier; and

sending the received first content, to the second server over the established TCP connection, in response to the receiving of the first content identifier.

45.    As described in the above paragraphs, upon information and belief, the Accused Services comprise numerous proxy devices each of which is a client device ("first client device") and a server of the Accused Services ("second server").  A web server that responds to HTTP requests ("web server") stores content ("first content") identified by an identifier ("first content identifier"), such as for example an HTTP web server storing a webpage identified by a URL address.   As described above, a first client device (a) establishes a TCP connection with a second server; (b) sends the first content identifier to the web server; (c) receives the first content from the web server over the Internet in response to the sending of the first content identifier; and (d) sends the received first content to the second server of the Accused Services over the established TCP connection in response to the receiving of the first content identifier.

46.    The '510 Patent includes a number of dependent claims.  In addition to practicing the steps of independent claim 1, upon information and belief as discussed above, NetNut and others using NetNut's Accused Services mentalities also practice at least the steps of the following dependent claims:

Claim 8: The method according to claim 1, further comprising periodically communicating over the TCP connection between the second server and the first client device.

Claim 15:  The method according to claim 1, further comprising receiving, by the first client device from the second server over the established TCP connection, the first content identifier.

Claim 16:  The method according to claim 1, wherein the sending of the first content identifier to the web server over the Internet comprises sending a Hypertext Transfer Protocol (HTTP) request that comprises the first content identifier.

Claim 18:  The method according to claim 1, wherein the second server is a Transmission Control Protocol/Internet Protocol (TCP/IP) server that communicates over the Internet based on, or according to, using TCP/IP protocol or connection, and wherein the first client device is a Transmission Control Protocol/Internet Protocol (TCP/IP) client that communicates with the second server over the Internet based on, or according to, TCP/IP protocol.

Claim 20:   The method according to claim 1, wherein the first content comprises web-page, audio, or video content, and wherein the first content identifier comprises a Uniform Resource Locator (URL).

Claim 22:   The method according to claim 1, further comprising storing, operating, or using, a client operating system.

Claim 23: The method according to claim 1, wherein the steps are sequentially executed.

47.  Upon information and belief, NetNut has had actual notice of the '510 Patent since before it developed and released the Accused Instrumentalities and knows at least from the Complaint that implementation of the Accused Instrumentalities using residential proxy devices in the United States would infringe at least claims 1, 8, 15, 16, 18, 20, 22 and 23 of the '510 Patent.

48.     Upon information and belief NetNut sold, offered to sell, used, tested, and imported and continue to sell, offer to sell, use, test, and import the Accused Instrumentalities into the United States.  NetNut provides the residential service of the Accused Instrumentalities to their customers

with the knowledge and intent that the customers' implementation of the service using residential proxies located in the U.S. would infringe the '510 Patent.

49.     NetNut has been and is now infringing at least directly, indirectly and/or contributorily, one or more claims including at least claims 1, 8, 15, 16, 18, 20, 22 and 23 of the '510 Patent, both literally and/or under the doctrine of equivalents, by implementing the Accused Instrumentalities using residential proxy devices located in the United States without authority and/or license from Bright Data and are liable to Bright Data under 35 U.S.C. § 271 et seq., including but not limited to under Sections 271(a), (b), (c) and/or (g).  On information and belief, NetNut has been aware of the Asserted Patents since before the development and release of the Accused Instrumentalities in the United States yet has continued to infringe and cause proxies in the United States under NetNut's control to infringe claims of the Asserted Patents and has induced infringement.  On further information and belief, NetNut has developed, used, offered to sell and/or sold within the United States and imported into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use.  On further information and belief, NetNut also imports and sells as well as causes others to use within the United States a product which is made by a process patented in the United States whereby the importation, offer to sell, sale, and/or use of the product occurs during the term of such process patent.  Such products may include for example, the set of results sent to customers in the United States as created and assembled by the patented methods of the Asserted Patents.

50.     As a result of NetNut's infringement of the '510 Patent, Bright Data has suffered and continues to suffer damages.  Thus, Bright Data is entitled to recover from NetNut the damages Bright Data sustained as a result of NetNut's wrongful and infringing acts in an amount no less than its lost profits and/or a reasonable royalty, together with interest and costs fixed by this Court together with increased damages up to three times under 35 U.S.C. § 284.

51.     Bright Data has suffered damage because of the infringing activities of NetNut, its officers, agents, servants, employees, associates, partners, and other persons who are in active concert or participation therewith, and Bright Data will continue to suffer irreparable harm for which there is no adequate remedy at law unless NetNut's infringing activities are preliminarily and permanently enjoined by this Court.  Bright Data practices the Asserted Patents and, on information and belief, practicing the Asserted Patents is required for a competitive offering of residential proxy services, a technology and market that Bright Data created. Non-exclusive examples of such damage include loss of market share, lowered prices and the inability of Bright Data to obtain the revenues and profits it would have been able to obtain but for the infringement, lost sales in other services when customers did not purchase residential proxy services from Laminate as a result of the infringement, loss of convoyed sales of other related services that Bright Data would have sold but for the infringement, and harm to Bright Data's reputation as a result of NetNut's lower quality and less protected offerings damaging the reputation and perception of the residential proxy service market that relies on the technology of the Asserted Patents.

52.     NetNut's infringement of the '510 Patent is and continues to be deliberate and willful because NetNut was and is on notice of the '510 Patent at least as early as the Complaint, yet NetNut continues to infringe the '510 Patent. This case should be deemed an exceptional case under 35 U.S.C. § 285, and if so, Bright Data is entitled to recover its attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Bright Data respectfully requests that this Court enter:

A.  A judgment in favor of Bright Data that NetNut has and is infringing the Asserted Patents;

B.  A judgment declaring NetNut's infringement to be willful;

C.  A judgment declaring that this case is exceptional within the meaning of 35 U.S.C. § 285;

D.  A permanent injunction enjoining NetNut, its officers, directors, agents, servants, employees, associates, partners, and other persons who are in active concert or participation with NetNut including the officers, directors, agents, servants, employees and associates of NetNut's partners, from infringing the Asserted Patents and/or such other equitable relief the Court determines is warranted in this case;

E.  A judgment and order requiring the NetNut to pay to Bright Data its damages, enhanced damages, costs, expenses, prejudgment and post-judgment interest, and attorneys' fees, if applicable, for NetNut's infringement of the Asserted Patents as provided under 35 U.S.C. §284 and/or §285, and an accounting of ongoing post- judgment infringement;

F.  A declaration that this is an exceptional case within the meaning of 35 U.S.C. § 285 and/or other applicable laws, and that Bright Data is entitled to recover its reasonable attorney's fees and costs upon prevailing in this action;

G.  Disgorgement of the amount by which NetNut have been unjustly enriched; and

H.  Any and all other relief, at law or in equity that this Court deems just or proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Bright Data hereby demands a trial by jury of all issues so triable.

Dated:  June 18, 2021                    Respectfully submitted,

By: */s/ Robert Harkins*

Korula T. Cherian
Robert Harkins
CA State Bar No. 179525
RuyakCherian LLP
1936 University Ave, Ste. 350
Berkeley, CA 94704
(510) 944-0190
sunnyc@ruyakcherian.com
bobh@ruyakcherian.com

*Attorneys for Plaintiff*
*Bright Data Ltd.*