# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| BRIGHT DATA LTD. | |
| *Plaintiff,* | Case No.  2:21-CV-00225-JRG-RSP |
| v. | ███████████████ |
| NETNUT LTD. | |
| *Defendant.* | |

## PLAINTIFF BRIGHT DATA'S MOTION FOR CORRECTIVE ACTIONS AND SANCTIONS FOR VIOLATION OF PROTECTIVE ORDER AND ABUSE OF <u>SETTLEMENT PROCESS</u>

## TABLE OF CONTENTS

I.    BACKGROUND ................................................................................................................. 3

II.   ARGUMENT ..................................................................................................................... 7

    A.  NetNut and Its Counsel Violated the Protective Order In Disclosing Bright Data's Confidential Information From the Settlement ................................................................. 7

    B.  NetNut Is Separately Prohibited Under the Express Terms of the Settlement Agreement from Disclosing the Confidential Terms of the Settlement Agreement .............................. 8

    C.  The Arbitration Provision of the Settlement Agreement Does Not Apply to Violations of the Protective Order or Otherwise Limit the Court's Inherent Authority .......................... 9

    D.  NetNut and Its Counsel Should Be Sanctioned for Violating the Protective Order Including Under the Court's Inherent Powers ............................................................... 10

    E.  These Violations of the Protective Order Were Particularly Egregious Given that The Violations Immediately Followed Dismissal of the Litigation and the Violations Were Timed to Correspond with Bright Data's Mediation in Parallel Proceedings Involving Overlapping Patents for Maximum Impact ...................................................................... 12

    F.  These Egregious Violations of the Protective Order Warrant Corrective Action and Sanctions Including, Payment of Attorney Fees and Other Relief .................................... 13

III.  CONCLUSION ............................................................................................................... 14

i

# **TABLE OF AUTHORITIES**

## **Cases**

*Bead Filters Int'l, LLC v. Christopher Mills & Int'l Filter Sols., Inc.,* Civil Action No. SA-09-
CV-105-XR, 2009 U.S. Dist LEXIS 105930 (W.D. Tex. Nov. 12, 2009) .............................. 10

*Conkling v. Turner*, 883 F.2d 431 (5th Cir. 1989) ........................................................ 13

*Gonzalez v. Trinity Marine Group, Inc.*, 117 F.3d 894 (5th Cir. 1997)........................................ 10

*In re Parametric Tech. Corp. Sec. Litig.*, 300 F. Supp. 2d 206 (D. Mass. March 29, 2001).......... 8

*Luminati Networks Ltd. v. UAB Tesonet and UAB Metacluster LT*, Case No. 2:18-cv-299-JRG
(E.D. Tex. April 7, 2020) ...................................................................................... 11

*Lunareye, Inc. v. Gordon Howard Assocs.*, 78 F. Supp. 3d 671 (E.D. Tex. 2015) ..................... 11

*Lyn-Lea Travel Corp. v. Am. Airlines,* 283 F.3d 282 (5th Cir. 2002)................................... 10, 11

*Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011) ........................................................ 8

*Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980) ................................................ 14

*Shelton v. Am. Motors. Corp.*, 805 F.2d 1323 (8th Cir. 1986)................................... 13

*Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.,* 685 F.3d 486 (5th Cir. 2012) ............... 10, 11

## **Rules**

Fed. R. Civ. P 37(b)(2)................................................................................................. 14

NetNut Ltd.[1] ("NetNut" or "Defendant") and its counsel violated the Protective Order in this case by publicly disclosing terms of the confidential settlement agreement ("Settlement," Ex. A) entered on May 15, 2022 between the parties. That agreement, marked "CONFIDENTIAL SETTLEMENT AGREEMENT PRIVILEGED & PROTECTED UNDER FRE 408," is highly confidential to Bright Data.  The Court granted the joint motion for dismissal and closed the case (Dkt. 153) on May 17, 2022 with Bright Data filing its notice of dismissal of the related *Ninja-Tech* case[2] on May 18, 2022.  Within 24-hours, NetNut and its counsel egregiously violated the confidentiality provisions of the settlement at least four times: (1) the Finnegan firm issued a press release via a third party media firm publicly disclosing financial terms of the settlement; (2) lead trial counsel Elliot Cook gave an interview with Law360 in which the public disclosure of financial terms was reiterated and quoted in a new story; (3) NetNut's parent company Safe-T Global Ltd. ("Safe-T") (bound by the settlement) issued a press release publicly disclosing multiple confidential terms including financial and non-financial terms in an unbalanced and highly misleading manner; and (4) Safe-T filed a Form 6-K document with the Securities and Exchange Commission improperly including the same improper disclosure as the press release.

This widespread campaign launched immediately after the settlement has been highly and likely irrevocably damaging to Bright Data.  The wanton disregard for settlement confidentiality also undermines this Court's ability to encourage parties to settle cases.  Who would settle a lawsuit if the other side could immediately and blatantly disregard key terms without severe repercussions?

---

[1] As used herein, "NetNut" includes its corporate parent, Safe-T Global Ltd. who ██████████████████████████████████████████████████████████ ██████████████████████████████████ Ex. A at 4.

[2] ██████████████████████████████████████████████████████████ *Bright Data Ltd. v. Ninja-Tech, SIA* involving a ███████████████████████████████ ██████████████████████████████████████████████████████. Ex. A at ¶6.

Law360 issued an article on May 19, 2022 ("Law360 Article," Ex. B) quoting lead counsel Elliot Cook and stating "[a]ccording to Finnegan Henderson Farabow Dunner & Garrett LLP, which represented NetNut, the parties ███████████████████████████," a clear violation of the confidentiality provision of the agreement.  Worse, Defendant's parent company Safe-T immediately and widely publicized a press release (Exs. C, D, E, F, G) disclosing more confidential provisions of the settlement, including the statement "[t]he Parties Agreed to a ████████████████████████████ Pursuant to the Terms of a Confidential Settlement Agreement," which acknowledged the agreement's confidentiality. NetNut and its counsel's selective release of confidential information was designed to inflict reputational harm on Bright Data within the marketplace including by misleading customers, competitors and investors in the proxy services marketplace that Bright Data's patents have little value and Bright Data's patent disputes can be resolved with no monetary consideration.

Bright Data promptly contacted NetNut's counsel on May 19, 2022 upon becoming aware of the violations of confidentiality to request that the Finnegan law firm immediately withdraw the improperly disclosed materials. *See. e.g.* Exs. H, I, and J.  Following a subsequent meet and confer between counsel for Bright Data and counsel for NetNut, the Finnegan law firm ███████████ ████████████████████████████████████████████ ███████████ and that Safe-T issued its press release to GlobalNewswire and separately submitted the same to the SEC and a regulatory body in Israel.  Ex. M at 1-2.  As of today the article is still on the Law360 website and the Safe-T press release is still available on the SEC website and other financial websites on the web. Meanwhile, far from taking responsibility for their actions, Mr. Cook, the Finnegan firm, and NetNut all assert they have done nothing wrong and refuse to withdraw the 6-K security filing that publicly includes improper, one-sided

disclosures (it is beyond dispute that under the settlement if NetNut was required to make such a disclosure it had to consult with Bright Data first, and it did not). Then they argue that because of the 6-K disclosure, all the other information was public and therefore excusable, even though the settlement does not permit press releases that disclose any terms of the agreement.

Therefore, Bright Data has been forced to file this motion seeking immediate corrective actions as well as sanctions against NetNut and their counsel.

## I.   BACKGROUND

### A.  *Confidential Settlement Agreement*

On May 15, 2022, as a result of lengthy FRE 408 settlement discussions subject to the Protective Order in this case (Dkt. 58), the Parties entered the settlement agreement attached as Exhibit A.  That agreement is designated "CONFIDENTIAL SETTLEMENT AGREEMENT PRIVILEGED & PROTECTED UNDER FRE 408" under the Protective Order and includes confidential terms including but not limited to ███████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████

████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
███████████████████

Ex. A at 3.

The confidentiality provision was a key term resulting from negotiations by both parties. Having executed the confidential settlement, the Parties filed a joint motion to dismiss (Dkt. 151) on May 16, 2022, which was granted on May 17, 2022 (Dkt. 151).

   B.  *Disclosure of Confidential* ███████████████████████ *By NetNut's Law Firm – Finnegan*

Despite the importance of confidentiality, on May 19, 2022, Law360 issued the article attached as Exhibit B entitled "NetNut Reaches ██████████████ in Proxy Server Suit." That article included the statement "[a]ccording to Finnegan Henderson Farabow Dunner & Garrett LLP, which represented NetNut, the parties ████████████████████ ██████" and separately quoted Elliot Cook. Ex. B at 1.  This statement disclosed █████████ ████████████████████████████ in violation of ██████████████. Upon learning of the article, Bright Data promptly sent letters to Mr. Cook and the Finnegan law firm's managing partner, Mr. Anand Sharma, notifying NetNut and its counsel of the breach and demanding immediate mitigation including retraction of the article.  Exs. H and I.  Bright Data also sent an email to the author of the Law360 article requesting that this article be taken off the website immediately, but Law360 refused to retract the article.  Ex. K.

   C.  *The Parties Met and Conferred But NetNut Failed to Mitigate Harm to Bright Data*

As the insistence of Bright Data, the Parties, including lead and local counsel, met and conferred on May 20, 2022.  Ex. L.  In response to NetNut's request, Bright Data sent a list of questions to determine the scope of disclosure by NetNut and its counsel and agreed to delay filing a motion for sanctions until after the weekend to give NetNut and its counsel an opportunity to take remedial action. *Id*.  Mr. Cook responded on May 21, 2022 by identifying a number of recipients of the disclosures by the Finnegan law firm and Safe-T Group, but did not identify any remedial actions taken by NetNut and its counsel other than a request by the Finnegan law firm

asking Law360 to retract the article (which did not result in any retraction).   Bright Data allowed through Monday, May 23, 2022 for NetNut and its counsel to implement appropriate remedies, but none were implemented.  On May 24, 2022, counsel for NetNut asked for additional input on its "suggestion," but given their adamant insistence that there were no improper acts and that they were required to make the disclosure in the 6-K form, the parties had reached an impasse.

In responding to Bright Data's questions, the Finnegan Law firm admitted to ███████████ ██████████████████████████████████████████ "NetNut has settled with Bright Data ███████████████████████". Ex. M at 1-2.  The Finnegan Law firm also represented that it reached out to Law360 to request withdrawal of the article, but as of today the article is still available on the Law360 website.  The Finnegan Firm has not confirmed whether it has otherwise taken any remedial actions including contacting the ███████████ to retract its disclosure.

### D. Disclosure of Confidential ████████████████████████████████████████ █ of Settlement Agreement By NetNut's Parent Company – Safe-T

That same day, and without any notification to Bright Data beforehand, Bright Data learned of a further breach of the confidentiality of the settlement in the form of a press release issued by Safe-T, which is attached as Ex. D.  That press release, discovered on Yahoo Finance, made a number of statements including ████████████████████████████████████████ ████████████████ Pursuant to the Terms of a Confidential Settlement Agreement."  Ex. D at 1. Safe-T selectively disclosed at least ██████████ of the settlement agreement. Bright Data promptly responded by sending a third letter (Ex. J) to Mr. Cook notifying Mr. Cook of this additional breach and demanding the immediate withdrawal of the press release.

Since the meet and confer, Bright Data has discovered that the Safe-T press release has also appeared on Safe-T's website, has been filed with the SEC as part of a 6-K disclosure, and has been published through the website www.globenewswire.com.  Ex. M at 1-2.  NetNut asserts

that Safe-T is obligated to disclose confidential terms of the settlement agreement under securities

laws, regardless of the confidentiality of such terms to Bright Data.  Ex. M at 1.  ██████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████  Ex. A at ¶ 12 (emphasis added).

*E.   Harm to Bright Data*

By selectively disclosing the ███████████████████████████████████████████████

█████████████████████████████████, NetNut and its counsel have created the misleading and

deceptive impression that Bright Data's patents have no value.  However, the settlement was based

on ██████████████████████████████████████████████████████████████████████████

███████████████████████████████████  Ex. A at 1.  In fact, ████████████████████████

████████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████  Ex. A at ¶ 5.  The selective disclosure

of settlement terms by the NetNut and its counsel creates the false impression that Bright Data's

patents do not cover U.S. based residential proxies.  That is wholly incorrect and harmful to Bright

Data, including because of the misimpression this creates among Bright Data's customers,

competitors and investors regarding the scope and enforceability of Bright Data's patents.  Further,

this selective disclosure has already been used by defendants[3] in the ongoing Teso, Code200 and

Tefincom actions to undermine Bright Data's claims and mediation position.

---

[3] Given the selective disclosure of confidential settlement terms by NetNut and its counsel, Bright
Data informed the mediator in the *Teso, Code200 and Tefincom* action of the breaches, anticipating

## II.     ARGUMENT

A. *NetNut and Its Counsel Violated the Protective Order In Disclosing Bright Data's Confidential Information From the Settlement*

The Settlement Agreement is designated "Confidential" under the Protective Order.  Ex. A at 1. "Pursuant to paragraphs 5, 9, and 10 of the Protective Order, documents designated "CONFIDENTIAL" can only be disclosed by the receiving party to specifically identified groups of people involved in the NetNut case including counsel of record and up to "three designated representatives of each of the Parties," excluding other third parties as well as the general public. Paragraph 14 of the Protective Order provides:

> There shall be no disclosure of any DESIGNATED MATERIAL by any person authorized to have access thereto to any person who is not authorized for such access under this Order. The Parties are hereby **ORDERED** to safeguard all such documents, information and material to protect against disclosure to any unauthorized persons or entities.

Despite the clear language of the Protective Order and confidentiality of the settlement agreement, NetNut did not request Bright Data's permission to disclose Bright Data's confidential information, ███████████████████████████████████ or even notify Bright Data of such disclosure ahead of time to permit Bright Data the opportunity to object and seek the Court's intervention if necessary.  Instead, NetNut and its counsel violated the Protective Order by disclosing protected information from the confidential settlement agreement to the general public through the Law360 article, the Finnegan Henderson media contacts, the Safe-T press release and the 6-K filing with the SEC.  NetNut has not identified any requirement that Safe-T was obligated to disclose specific confidential terms of the Settlement under the SEC, and Bright Data is aware

---

such disclosures to be used against Bright Data.  For example, within three business days of the breach, during a procedural hearing before the PTAB regarding one of the asserted patents from the NetNut case, counsel for Code200 repeatedly referenced the Settlement ████████████ ████████████ as part of Code200's argument regarding the validity of the patent.

of none. "[I]t bears emphasis that § 10(b) and Rule 10b-5(b) do not create an affirmative duty to disclose any and all material information. Disclosure is required under these provisions only when necessary "to make . . . statements made, in the light of the circumstances under which they were made, not misleading. Even with respect to information that a reasonable investor might consider material, companies can control what they have to disclose under these provisions by controlling what they say to the market." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44-45 (2011) (internal citations omitted); *see also In re Parametric Tech. Corp. Sec. Litig.*, 300 F. Supp. 2d 206, 212 (D. Mass. March 29, 2001) ("[A] company's obligation to disclose material nonpublic information arises from a duty imposed by law, and in the absence of such a duty, a publicly traded company does not have a general obligation to disclose internal information, even if investors might think it material to understanding the company's financial position. Neither Section 10(b) of the Exchange Act nor Rule 10b-5 itself imposes an affirmative duty of disclosure.")

While Bright Data disputes any requirement that Safe-T disclose confidential terms of the settlement agreement to the SEC, Safe-T has no requirement to issue a press release at all, much less disclose specific terms of the settlement agreement in that press release. NetNut cannot use its status as a publicly traded company to unilaterally and selectively disclose terms of a settlement in disregard of the protective order and confidential status of the settlement agreement. Further, the 6-K filing with the SEC does not otherwise excuse or permit NetNut or its counsel to issue press releases and otherwise disclose the same or other confidential provisions of the Settlement.

B. *NetNut Is* █████████████████████████████████████████████

In addition to violating the protective order, NetNut and its counsel also breached ███

████████████████████████████████████████████████████████████████████████.

████████████████████████████████████████████████████████████████████████



Bright Data disputes that Safe-T had an obligation to selectively disclose terms of the settlement agreement under governing securities regulations, but regardless,

.

C.   *The* *Violations of the Protective Order or Otherwise Limit the Court's Inherent Authority*

The settlement agreement

Ex. A at 13.

However, a breach of the settlement agreement is distinct and separate from a breach of the protective order.  The actions by NetNut and the Finnegan law firm to disseminate Bright Data's designated information violates the Protective Order in this case.  Further, the Court has the inherent authority to manage its own cases including protecting settlement talks and confidential Settlement entered by the Bright Data and NetNut under FRE 408.  NetNut and its counsel waited until just after dismissal of this case and Bright Data's filing of the notice of dismissal of the Ninja-Tech case to violate the confidentiality of the agreed terms of the settlement through multiple public releases of select terms of that settlement.  NetNut and its counsel cannot circumvent the

authority of this Court by simply delaying their disclosure of confidential information until after dismissal of the cases. █████████████████████████████████████████

███████████      For example, it is up to the Court to determine an appropriate sanction for the Finnegan law firm violating the Court's protective order by disseminating Bright Data's confidential information as part of a press release for the Finnegan law firm.

### D. *NetNut and Its Counsel Should Be Sanctioned for Violating the Protective Order Including Under the Court's Inherent Powers*

Despite Bright Data's notice to NetNut of these violations, NetNut and its counsel has effected no corrective action.  These violations were particularly egregious given the efforts by NetNut and its counsel to broadly and immediately publicize selective terms of the confidential settlement agreement. *See e.g.* Exs. B-G.  Federal Rule of Civil Procedure 37(b) authorizes sanctions, including contempt, for  failure to comply with discovery orders, such as protective orders. *see e.g., Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.,* 685 F.3d 486, 488 (5th Cir. 2012) (upholding award of sanctions imposed for party's inadvertent disclosure of confidential materials in violation of a protective order); *Lyn-Lea Travel Corp. v. Am. Airlines,*  283 F.3d 282, 290 (5th Cir. 2002) (upholding award of attorneys' fees and expenses imposed as a sanction for party's violation of a protective order); *Bead Filters Int'l, LLC v. Christopher Mills & Int'l Filter Sols., Inc.,* Civil Action No. SA-09-CV-105-XR, 2009 U.S. Dist. LEXIS 105930 (W.D. Tex. Nov. 12, 2009) (finding an award of costs and attorney's fees was an appropriate sanction for violating a protective order).  In  addition to Rule 37, this court also has inherent power to authorize sanctions. *Gonzalez v. Trinity Marine Group, Inc.*, 117 F.3d 894, 898 (5th Cir. 1997).

As discussed above, public disclosure of protected information is a clear violation of the Protective Order.  In *Lyn-Lea*, the Fifth Circuit upheld sanctions for almost identical behavior against a party that disclosed the contents of sealed documents to the press and further issued a

contempt order against that party's counsel for filing a complaint quoting portions of sealed documents in violation of the protective order.  283 F.3d 282, 290-291. In *Smith & Fuller,* the Fifth Circuit upheld sanctions against a law firm for disclosing protected information to a number of personal injury lawyers even though the disclosure was inadvertent, which was on top of corrective actions that the firm was already ordered to perform. 685 F.3d 486, 490.  In *Lunareye, Inc.*, where the defendant violated the protective order by disclosing protected information to the PTAB in an IPR proceeding, the district court-imposed sanctions in addition to corrective actions requiring defendant to join plaintiff to move the PTAB maintain the information under seal. *Lunareye, Inc. v. Gordon Howard Assocs.*, 78 F. Supp. 3d 671, 676 (E.D. Tex. 2015).

In a similar case, Teso LT, UAB issued a press release following settlement and closing of the case of *Luminati Networks Ltd. v. UAB Tesonet and UAB Metacluster LT*, Case No. 2:18-cv-299-JRG (E.D. Tex. April 7, 2020).  Despite the case being closed, the Court granted a motion for sanctions based post-settlement statements made by defendant Teso:

> As to Teso's Press Releases, the Court finds that **Teso has engaged in intentional misrepresentations and mischaracterizations via half-truths that violated the terms and spirit of the confidential settlement that resolved this case**. As such, the Court **ORDERS** Teso to disclose to Luminati within **seven (7) days** the names of any third parties to which Teso has made affirmative statements regarding the settlement of the above-captioned case by written press release, email, or other written means. In addition, the Court **ORDERS** Teso to issue a subsequent press release within **seven (7) days** to all persons it previously communicated with about such settlement indicating: that the Court did not make a merits judgment; that the settlement was by mutual agreement entered into freely by both parties; and that the dismissal was merely the procedural means by which the Court carried out the parties' mutual agreement. Further, the Court **ORDERS** Teso to pay Luminati its reasonable attorneys' fees for bringing and prosecuting the Sanctions Motion, with such payment to occur within **ten (10) days**.

Ex. I at 2. (emphasis added).

In this case, the disclosure is even more egregious as NetNut and its counsel disclosed highly confidential terms from the settlement giving the misleading and deceptive appearance that

11

Bright Data's patents have little value.  NetNut and the Finnegan law firm have created a situation in which there is no corrective action they can take to make Bright Data whole ensuring great reputational damage to Bright Data.  Bright Data requests that the Court use its authority to sanction NetNut and its counsel under the Protective Order and its own inherent powers.

E. *These Violations of the Protective Order Were Particularly Egregious Given that The Violations Immediately Followed Dismissal of the Litigation and the Violations Were Timed to Correspond with Bright Data's Mediation in Parallel Proceedings Involving Overlapping Patents for Maximum Impact*

As discussed above, NetNut and the Finnegan law firm selectively disclosed highly confidential terms of the settlement agreement within days of the closing of the litigation while Bright Data is actively engaged in mediation with other defendants before this Court involving the same patents.  Within the same public disclosures, NetNut admitted that the settlement is confidential, but selectively released terms anyway.  The widespread publication of these selective terms was intended to have a maximum impact on Bright Data as it was timed to occur immediately after the closing of the case when NetNut and its counsel know that Bright Data is currently engaged in mediation with defendants in the Teso, Code200 and Tefincom cases.  Unlike the inadvertent disclosure in *Smith & Fuller*, NetNut and its counsel knew what they were doing when they willfully disseminated this information through Law360 and Safe-T's press release.  Their violations of the Protective Order were egregious and should be sanctioned accordingly.

In order to assess the extent of the disclosure of Bright Data's protected information, Bright Data requests the depositions of Safe-T's CEO Shachar Daniel and Defendant's counsel Elliot Cook, who were quoted in the article and press release. With regard to Safe-T's press release, the Finnegan law firm identified the disclosure on Safe-T's website, an article on www.globenewswire.com, and a 6-K filing with the SEC, but otherwise has not identified any other recipients of the press release or any other efforts by Safe-T to disseminate the press release.

Ex. M at 1.  A deposition of Mr. Shachar Daniel, who is quoted in the press release as Chief

Executive Officer of Safe-T, is warranted to determine the scope of distribution of this press

release. Ex. G at 1.

Similarly, a deposition of Mr. Cook is warranted in this case based on the *Shelton* factors

as "(1) no other means exist to obtain the information than to depose opposing counsel; (2) the

information sought is relevant and nonprivileged; and (3) the information is crucial to the

preparation of the case." *Shelton v. Am. Motors. Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986).  Mr.

Cook is personally quoted in the Law360 press release, which was publicly disseminated through

various international media outlets.[4] There is no other means to determine the extent of the

disclosure of Bright Data's protected information and assess the extent of damages incurred by

Plaintiff.  Further, Plaintiff is merely seeking discovery on the extent of the disclosure of its own

protected information, which is relevant and not privileged to NetNut. Even if "confidential

communications are made a material issue in [this] judicial proceeding, fairness demands treating

the defense as a waiver of the privilege." *Conkling v. Turner*, 883 F.2d 431, 434 (5th Cir. 1989)

("The attorney-client privilege was intended as a shield, not a sword.") (internal quotations and

citations omitted). Lastly, Mr. Cook's testimony will be crucial to determining the extent of

damages incurred from protected information being disclosed to the public.

*F. These Egregious Violations of the Protective Order Warrant Corrective Action and Sanctions Including, Payment of Attorney Fees and Other Relief*

While insufficient to make Bright Data whole, Bright Data also respectfully requests that

NetNut and its counsel be ordered to take corrective actions including providing discovery

---

[4] Mr. Cook provided a report of the dissemination of the breach disclosures but not under oath, and NetNut's counsel refused to provide information about who at his firm spoke with the press or what was said in those communications, asserting that such information was not to resolve the issue but constituted "discovery" that they would not supply.

including declarations and depositions to determine the scope of disclosure by NetNut and its counsel, sending apologies and requests for retraction to all recipients of the disclosures, correcting Safe-T Group's filing with the SEC including, but not limited to a request to delete its 6-K filing https://www.sec.gov/page/edgar-how-do-i-correct-withdraw-or-delete-filing; and issuance of a corrective press release explaining that settlement of the case was based on NetNut's representation that ████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████. The above corrective measures are available under Fed. R. Civ. P 37(b)(2) and the Court's inherent powers and provide bare minimum corrective actions that would impose a minimum burden, considering NetNut and its counsel's public dissemination of confidential terms of the settlement agreement.

In addition, to the above corrective measures, NetNut and its counsel should also be subject to sanctions to penalize the violation of the protective order. Rule 37 sanctions must be applied diligently both "to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763-764 (1980). Bright Data requests that sanctions against NetNut and the Finnegan law firm include an award of Bright Data's attorneys' fees and costs, and any other relief that the Court may find appropriate.

## III.   CONCLUSION

For the reasons provided above, Bright Data respectfully requests that the Court order that NetNut provide Messrs. Shachar Daniels, Elliot Cook and a 30(b)(6) representative for NetNut Ltd. for depositions related to the disclosure and publication of Bright Data's protected information. Bright Data further respectfully requests that the Court order NetNut and its counsel to take corrective actions including (a) a declaration from each of the Finnegan law firm and

14

NetNut Ltd. (including its acting CEO and sole director Shachar Daniel, who also runs Safe-T, which is included as part of NetNut under the settlement), identifying all third-party recipients of confidential information from the settlement agreement; (b) an apology by the Finnegan law firm to each recipient of the disclosed information from the Finnegan law firm, including but not limited to ███████████████████████████████ of the Finnegan law firm's email, for disclosing confidential information in violation of a protective order and confidential settlement agreement, and a request to retract any article, press release or other communication comprising terms from the confidential settlement agreement; (c) an apology by Safe-T Group Ltd. to each recipient of the disclosed information from the Safe-T Group, including but not limited to the identified recipients of Safe-T's press release including the SEC, explaining that Safe-T Group Ltd. made a selective disclosure of confidential terms which is a violation of the protective order and confidential settlement agreement and misleading in the context of the totality of the settlement, and a request by Safe-T Group for a retraction of the same press release by each of the recipients, including the SEC; (d) withdrawal / deletion of the improper Safe-T 6-K  filing with the SEC; (e) issuance of a corrective press release explaining that NetNut's prior press release was improper, included misleading information about the settlement, and should be disregarded; and (f) an order that NetNut include the statement ████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████. After completing discovery and assessing the actions, Bright Data requests to submit a statement of appropriate damages to be awarded as a result of the breach. In addition, Bright Data requests sanctions including its costs and attorneys' fees as well as any relief that the Court may find appropriate.

Dated: May 24, 2022

Respectfully submitted,

By: */s/ Ronald Wielkopolski*

Elizabeth L. DeRieux
State Bar No. 05770585
Capshaw DeRieux, LLP
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: 903-845-5770
ederieux@capshawlaw.com

J. Mark Mann
G. Blake Thompson
Mann | Tindel | Thompson
300 West Main
Henderson, TX 75652
mark@themannfirm.com
blake@themannfirm.com
Office 903-657-8540
Marshall Office 903-472-4294
Tyler Office 903-596-0900
Waco Office 254-776-3336

Korula T. Cherian
Robert Harkins
RuyakCherian LLP
1936 University Ave, Ste. 350
Berkeley, CA  94704
sunnyc@ruyakcherian.com
bobh@ruyakcherian.com

Thomas Dunham
Ronald Wielkopolski
J. Michael Woods
RuyakCherian LLP
1901 L St. NW, Suite 700
Washington, DC 20036
tomd@ruyakcherian.com
ronw@ruyakcherian.com
michaelw@ruyakcherian.com

***Attorneys for Plaintiff***
***Bright Data Ltd.***

16

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served this 24th day of May 2022, with a copy of this document via CM/ECF.

*/s/ Ronald Wielkopolski*

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that the counsels for the parties have complied with Local Rule CV-7(h).  Bob Harkins, Ron Wielkopolski, Betty DeRieux and Blake Thompson on behalf of Plaintiff and Elliot Cook, Diana Ashton and Eric Findlay on behalf of Defendant engaged in a telephonic meet and confer on May 20, 2022.

*/s/ Ronald Wielkopolski*

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document is being filed under seal pursuant to the Protective Order entered in this case.

*/s/ Ronald Wielkopolski*

17