**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **BRIGHT DATA LTD.** | § | |
| | § | |
| **Plaintiff,** | § | **CIVIL ACTION NO. 2:21-cv-00225-** |
| | § | **JRG-RSP** |
| **v.** | § | |
| | § | |
| **NETNUT LTD.** | § | **JURY TRIAL DEMANDED** |
| | § | |
| **Defendant.** | § | |
| | § | |
| | § | |

**DEFENDANT NETNUT LTD.'S OPPOSITION TO PLAINTIFF BRIGHT DATA LTD.'S
MOTION FOR CORRECTIVE ACTIONS AND SANCTIONS FOR VIOLATION OF
PROTECTIVE ORDER AND ABUSE OF SETTLEMENT PROCESS**

## TABLE OF CONTENTS

I.    FACTUAL BACKGROUND ................................................................................. 2

    A.    The *Bright Data I* Litigation ..................................................................... 2

    B.    The Parties Settle *Bright Data I* and Safe-T Files Its Required Form 6-K, Substantively the Same as Its Challenged Form 6-K Filing Here ............................. 2

    C.    Bright Data Had No Objection or Complaint to Any of Safe-T's SEC Filings or Press Releases in *Bright Data I* ................................................................... 3

    D.    The *Bright Data II* Litigation................................................................... 4

    E.    The Parties Settle *Bright Data II* and Safe-T, Again, Makes Its Required Form 6-K Filing................................................................................................. 4

    F.    Bright Data Raises Complaints It Never Made Following *Bright Data I*.................. 5

    G.    As a Courtesy, NetNut's Counsel Cooperated with Bright Data to Limit Publication Other than The Required Form 6-K Filing .................................................. 6

    H.    NetNut's Proposed Additional Cooperation Was Ignored by Bright Data................ 6

    I.    Bright Data Filed this Motion After NetNut Agreed to Dismiss its IPRs ................. 7

II.    ARGUMENT ............................................................................................... 7

    A.    ████████████████████████, Which the Law Strongly Favors ............. 7

    B.    There Has Been No Breach of the Settlement Agreement ........................................ 9

        1.    The Settlement Agreement ████████████████, Consistent with Safe-T's Established Course of Conduct .......... 9

        2.    The IP Law360 Article Contains Less Information Than the Form 6-K ...... 12

    C.    There Has Been No Violation of the Protective Order ............................................. 12

    D.    Bright Data's Strained Harm Arguments Make No Sense ....................................... 15

    E.    Discovery is Not Warranted..................................................................... 15

███████████████

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re ArthroCare Corp. Sec. Litig.*,
   726 F. Supp. 2d 696 (W.D. Tex. 2010).........................................................10

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988).....................................................................................10

*BP Exploration Libya Ltd. v. ExxonMobil Libya Ltd.*,
   689 F.3d 481 (5th Cir. 2012) .........................................................................8

*Duse v. Int'l Bus. Machines Corp.*,
   252 F.3d 151 (2d Cir. 2001)..........................................................................11

*In re Hi-Crush Partners L.P. Sec. Litig.*,
   No. 12 CIV. 8557 CM, 2013 WL 6233561 (S.D.N.Y. Dec. 2, 2013) ...........11

*Lormand v. US Unwired, Inc.*,
   565 F.3d 228 (5th Cir. 2009) .......................................................................10

*Meyer v. Jinkosolar Hldgs. Co.*,
   761 F.3d 245 (2d Cir. 2014)..........................................................................10

*Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983)...........................................................................................8

*Nguyen v. Excel Corp.*,
   197 F.3d 200 (5th Cir. 1999) .......................................................................13

*Paice LLC v. Hyundai Motor Co.*,
   No. WDQ-12-499, 2015 WL 13594450 (D. Md. May 5, 2015).....................15

*Peskoff v. Faber*,
   233 F.R.D. 207 (D.D.C. 2006)......................................................................11

*Polyflow LLC v. Specialty RTP, LLC*,
   993 F.3d 295 (5th Cir. 2021) .........................................................................8

*Rubinstein v. Collins*,
   20 F.3d 160 (5th Cir. 1994) .........................................................................10

*Terrebonne v. K-Sea Transp. Corp.*,
  477 F.3d 271 (5th Cir. 2007) .......................................................................................8

*VanLeeuwen v. Farm Credit Admin.*,
  600 F. Supp. 1173 (D. Ore. 1984)...............................................................................13

*Wash. Mut. Fin. Grp., LLC v. Bailey*,
  364 F.3d 260 (5th Cir. 2004) ...................................................................................7, 8

*Wash. Nat. Ins. Co. v. Jefferies & Co., Inc.*,
  No. 89 C 2216, 1992 WL 186057 (N.D. Ill. July 27, 1992) .......................................13

*Wi-Lan, Inc. v. Acer, Inc.*,
  No. 2:07-cv-473, 2009 WL 1766143 (E.D. Tex. June 23, 2009) ................................13

**Other**

Report of Foreign Private Issuer Pursuant to Rule 13a-16 OR 15d-16 Under the Securities
  Exchange Act of 1934 (Form 6-K) (Ex. U)............................................................9, 10

Current Report Pursuant to Section 13 OR 15(d) of The Securities Exchange Act of 1934
  (Form 8-K) (Ex. W)....................................................................................................12

The NASDAQ Stock Market LLC Rules (Ex. V) ....................................................10, 12

██████████████████████████████████████

Bright Data's motion is a malicious affront to Safe-T, NetNut, and NetNut's counsel.  All of the information Bright Data complains was improperly made public is contained in Safe-T's Form 6-K filing of May 19, 2022 (Ex. F).  That disclosure was required by General Instruction B of Form 6-K, mandating disclosures of "material legal proceedings," and NASDAQ rules requiring listed companies to make prompt "disclosure of any material information that would reasonably be expected to affect the value of its securities or influence investors' decisions."  Moreover, Safe☐T adhered to the exact same disclosure approach it followed in December 2021 when the parties settled the earlier litigation filed by Bright Data.  Promptly after that settlement, Safe-T filed a substantially similar Form 6-K on December 14, 2021, including the very same disclosures that Bright Data now challenges, including ███████████████████████████████████████ ████████████████████████████████ Ex. C at 1; *see also* Ex. I at 2; Ex. J at 5; Ex. H at 17, 78 & F-31; Ex. D at 1-2; Ex. K at 1-2; Ex. L at 3; Ex. M at 4 (same).

Bright Data ***never objected*** to any of these public disclosures regarding the parties' first settlement, including ████████████████████████████████████████████████████ Nor did Bright Data ever dispute the propriety of these disclosures under federal securities laws.  Bright Data's contrary position now (Dkt. 156) is not only disingenuous and would have Safe-T violate securities law, but conflicts the parties' settlement agreement for two clear reasons:



(1) ████████████████████████████████████████████████████████████ and

(2) ██████████████████████████████████████████████████

To make its misguided claims, Bright Data asserts that the timing of the challenged disclosures was intentionally designed to cause injury to Bright Data.  This is factually false.  The timing and substance of the disclosures is mandated by securities law and mirrors the approach of

██████████████████████████████████

Safe-T's disclosures in the parties' earlier settlement.  Contrary to Bright Data's claims of ill intent,

██████████████████████████████████████ Ex. N, S. Daniel Decl. ¶ 19.

## I.    FACTUAL BACKGROUND

### A.    The *Bright Data I* Litigation

Bright Data (f/k/a Luminati Networks Ltd.) first sued NetNut for alleged patent infringement on June 11, 2020, in *Luminati Networks Ltd. v. NetNut Ltd.*, No. 2:20-cv-00188 (E.D. Tex.) ("*Bright Data I*").  Because NetNut's parent company, Safe-T, is publicly traded and dual-listed on both the NASDAQ and Tel Aviv Stock Exchange ("TASE"), it is required to apprise the investing public of material events that may affect its value.  Ex. O, H. Gal. Decl. ¶¶ 4-5; Ex. N ¶¶ 4-7.

Immediately upon the filing of *Bright Data I*, Safe-T took the position that events in this case could have a material impact on the company and must be disclosed.  Ex. O ¶ 7; Ex. N ¶ 9. Within days of the lawsuit, Safe-T disclosed it in a Form 6-K filing with the U.S. Securities and Exchange Commission ("SEC").  Ex. O ¶ 7; Ex. N ¶ 9.  In the following months, Safe-T issued numerous more SEC filings pertaining to events in the case and the financial impact of the case on Safe-T, including that "the ongoing litigation may potentially result in costs or liability that we will absorb, as well as restrictions and/or cessation of NetNut's operations and services in the United States."  Ex. O ¶ 22; Ex. H at 17.

### B.    The Parties Settle *Bright Data I* and Safe-T Files Its Required Form 6-K, Substantively the Same as Its Challenged Form 6-K Filing Here

On November 8, 2021, Bright Data and NetNut entered an agreement to resolve *Bright Data I*.  Ex. B.  The Court dismissed the case on December 10, 2021.  Two business days later, on December 14, 2021, Safe-T filed a Form 6-K to disclose material information about the settlement. Ex. C.  That Form 6-K is substantively the same as the Form 6-K filed on May 19, 2022 that Bright

Data now challenges (*see* Dkt. 156 at 1, 2, 3, 5), as shown below:

| Safe-T Dec. 14, 2021 Form 6-K (Ex. C) <br> Never Challenged by Bright Data | Safe-T May 19, 2022 Form 6-K (Ex. F) <br> Now Challenged by Bright Data |
|---|---|
| | |

As required by SEC regulations, Safe-T's Form 6-K of December 14, 2021 (Ex. C) was filed while Safe-T issued a press release in parallel, repeating the same substance (Ex. D). This press release was made available on Safe-T's website, as are all other public communications from the company.

Consistent with the requirements of federal securities laws, Safe-T filed additional SEC disclosures and press releases that specifically referenced ███████████████ ██████████████████████ from the *Bright Data I* settlement. These included a Form 6-K filing of March 29, 2022 (Ex. I at 2), corresponding press release of March 29, 2022 (Ex. J at 5), and Form 20-F filing of March 29, 2022 (Ex. H at 17); *see also* Ex. K at 1; Ex. L at 3; Ex. M at 4.

**C.** **Bright Data Had No Objection or Complaint to Any of Safe-T's SEC Filings or Press Releases in *Bright Data I***

As indicated above, Bright Data **never** challenged **any** of the numerous public filings Safe-T made regarding the *Bright Data I* settlement that specifically referred to ███████████ ██████████████████████████████████ *See* Ex. C at 1; Ex. I at 2; Ex. J at 5; Ex. H at 17, 78 & F-31; Ex. D at 1-2; Ex. K at 1-2; Ex. L at 3; Ex. M at 4. During the parties' meet-and-confer on May 20, 2022, counsel for NetNut specifically referenced the December 14, 2021 Form 6-K filing to illustrate how Safe-T has consistently fulfilled its securities

3

law obligations when material events arose.  Counsel for NetNut explained that all of the language complained of by Bright Data, which is contained in Safe-T's May 19, 2022 Form 6-K, is mirrored in Safe-T's December 14, 2021 Form 6-K from the parties' settlement in *Bright Data I*.  Counsel for Bright Data had no response to this during the meet-and-confer.  Bright Data's motion likewise fails to address this at all.  There can be no dispute that Safe-T's manner of reporting material information arising from the parties' settlements, in *Bright Data I* and identically in *Bright Data II*, is proper and lawful.

### D.      The *Bright Data II* Litigation

Before the parties finalized their settlement in *Bright Data I*, Bright Data sued NetNut again, in *Bright Data Ltd. v. NetNut Ltd.*, 2:21-cv-00225 (E.D. Tex.) ("*Bright Data II*").  As required under the law and consistent with its past conduct, Safe-T issued numerous SEC filings referencing *Bright Data II*.  Ex. O ¶¶ 9, 16-22; Ex. N ¶¶ 11, 15-18.  Safe-T again disclosed the gravity of the possible consequence it faced from *Bright Data II* and stated that the case "may potentially result in costs or liability that we will absorb, as well as restrictions and/or cessation of NetNut's operations and services in the United States."  Ex. O ¶ 22; Ex. H at 17.

### E.      The Parties Settle *Bright Data II* and Safe-T, Again, Makes Its Required Form 6-K Filing

On May 15, 2022, the parties signed their settlement agreement resolving *Bright Data II*. Ex. E.  Two clauses in the agreement are particularly relevant to Bright Data's motion:

(1)


(2)

Just as the settlement of *Bright Data I* triggered an obligation for Safe-T to disclose certain material information to investors, so did the settlement of *Bright Data II*. Ex. O ¶¶ 17-23; Ex. N ¶¶ 15-18. Safe-T thus treated the settlement of *Bright Data II* identically to how it treated that in *Bright Data I*, by issuing a public disclosure (Ex. G) and filing a corresponding Form 6-K with the SEC (Ex. F) on May 19, 2022.[1] Ex. O ¶¶ 18-22; Ex. N ¶¶ 15-18. As before, this limited statement avoids public disclosure of all details of the settlement and does so ██████████ ██████ while complying with the requirements of securities law.

The other disclosure that Bright Data complains of[2] contains much *less* information regarding the settlement. The IP Law360 article refers only to ██████████████████ ██████ Dkt. 156, Ex. B. There is no disclosure regarding the parties' settlement, by anyone, that extends beyond Safe-T's required regulatory filing.

F.       **Bright Data Raises Complaints It Never Made Following *Bright Data I***

Despite Safe-T following the identical disclosure protocol for the *Bright Data I* and *Bright Data II* settlements, Bright Data now asserts that the *Bright Data II* disclosures "egregiously violated ██████████████████████." Dkt. 156 at 1; *see also id.* at 2; Dkt. 156, Exs. H, I, J. Nowhere does Bright Data address the consistency of Safe-T's disclosures or the stark inconsistency in Bright Data's reaction to such disclosures.

---

[1] Bright Data requests that Safe-T retract this regulatory filing despite knowing that "SEC staff generally will not delete the original filing from the EDGAR system," as stated in the guidelines Bright Data itself cites. Dkt. 156 at 14.

[2] Bright Data falsely asserts an "interview with Law360" held by Elliot Cook. ██████████ ██████████████████████████ *See* Dkt. 156, Ex. M ██████████ ██████████████████████ ).

**G. As a Courtesy, NetNut's Counsel Cooperated with Bright Data to Limit Publication Other than The Required Form 6-K Filing**

Immediately following Bright Data's complaints about the *Bright Data II* disclosures, NetNut's counsel cooperated with Bright Data to limit further publications regarding the settlement. As counsel for NetNut made clear, ███████████████████████████

███████████████████████████████ Dkt. 156, Ex. M at 2. While Safe-T was obligated as a public company to disclose certain material information pertaining to the settlement—and no other publication went beyond such disclosure, *supra* § I.E— ████████████

█████████████████████████████████████████████████████████████████

██████████ *Id.* NetNut's counsel thus took significant steps to address this concern, including: (i) requesting that IP Law360 take down its article (*id.*), (ii) asking the Litigator of the Week (ALM) periodical not to publish anything regarding the settlement, which they agreed not to do (*id.*), (iii) not giving any interviews about the settlement (indeed, none were given) (*id.*), and (iv) instructing Finnegan's public relations firm not to communicate further about the settlement (*id.*).

**H. NetNut's Proposed Additional Cooperation Was Ignored by Bright Data**

During their meet-and-confer on May 20, 2022, the parties discussed cooperative actions that could be taken in view of Bright Data's concerns. NetNut's counsel promptly followed up the very next day—Saturday, May 21, 2022—with several proposed ██████████ *Id.* Bright Data ignored them. Despite Bright Data's professed urgency in discussing cooperation, counsel for NetNut had to remind Bright Data on May 24, 2022 that it had received no response over the last three days. Ex. T. Rather than engage with NetNut on any of these proposed cooperative measures, Bright Data instead declared an impasse later that day and filed the present motion. *Id.* In discussions between the parties' respective CEOs, ████████████████████████

█████████████████████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████ Ex. N ¶¶ 19-20.

## I.  Bright Data Filed this Motion After NetNut Agreed to Dismiss its IPRs

████████████████████████████████████████████████████████████

██████████████████████████████████. Ex. E ¶ 8.  In their joint motions to

terminate, which Bright Data prepared, the parties confirmed: "The Parties have resolved all

disputes between them and with regard to the '044 Patent."  Ex. P at 4; *see also* Ex. Q at 4; Ex. R

at 3; Ex. S at 3.  The motions further stated: "The Parties contemplate no new administrative or

district court proceeding between them in the foreseeable future."  Ex. R at 3.  These statements

were true as to NetNut, who maintained that there was no violation of the settlement agreement

and was then discussing cooperation with Bright Data, *supra* § I.H; Ex. T.  After NetNut consented

to these joint motions, Bright Data's counsel confirmed that it was filing the present motion, which

it did that evening.

## II.  <u>ARGUMENT</u>

### A.  ██████████████████████████, **Which the Law Strongly Favors**

"████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████ *Wash. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004).  ██████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████  The Court thus lacks jurisdiction over the parties' dispute.

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████ Ex. E ¶ 13.  ████████████████████████████████

██████████████████████████████

████████████████████████ *Id.* ████████████████████████████

██████ █████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████

Bright Data alleges violations of the settlement agreement's confidentiality provision based on language found in Safe-T's Form 6-K filing (and repeated in whole or part in the other challenged disclosures), including: ████████████████████████████████████████

██████████████████████████████████[3] Each of these allegations is

█████████████████████████████████████████████████

████████████████████████████████████████. ████████████████████

---

[3] *See also id.* at 4 (alleging "violation" and "breach" of settlement agreement ██████████ ), 5 (alleging "further breach of the confidentiality of the settlement [agreement]" (emphasis added)), 8 ("NetNut and its counsel also breached the confidentiality terms of the settlement agreement" (emphasis added)).

██████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████████████████████████████ Ex. E ¶ 13 (emphases added).

Although Bright Data makes arguments related to the protective order, the core of the dispute is the propriety of the disclosures ███████████████████████████████████████████ ███████. Bright Data cites no law allowing a protective order to ██████████████████ ███████████████████████████████████████████████████████████████████ ████████████████. Nor can it. Such a holding would eviscerate the settlement agreement's own confidentiality ███████████████████. Bright Data's position is contrary to █████████████ ███████████████████████████████████████████████████████████████████ ██████████████████████████.

## B. There Has Been No Breach of the Settlement Agreement

The information that Bright Data asserts was improperly disclosed is *all* contained in Safe-T's Form 6-K of May 19, 2022. Ex. F. This filing was required by law ████████████████ ████████████████████, Ex. E ¶ 12. Additionally, this disclosure follows the identical approach that Safe-T followed upon the settlement of *Bright Data I*, to which Bright Data never objected.

### 1. The Settlement Agreement ████████████████████████████████████ ████████████, Consistent with Safe-T's Established Course of Conduct

The settlement agreement ███████████████████████████████████████████████████ ████████████████████████████████████ Ex. E ¶ 12. Bright Data claims to be unaware of any legal obligation allowing Safe-T's disclosures. *See* Dkt. 156 at 7-8 (citing §10(b) of the Securities Exchange Act of 1934 and Rule 10b-5). *Id.* at 8. Bright Data is wrong on the law. As a publicly traded company in the United States with foreign private issuer status, Safe-T is required to make disclosures as outlined in Form 6-K, "Report of Foreign Private Issuers Pursuant to Rule 13a-16 or 15d-16 Under the Securities Exchange Act of 1934." General Instruction B requires

foreign issuers and their subsidiaries to promptly disclose "material legal proceedings." Ex. U. Additionally, NASDAQ requires listed companies to make prompt "disclosure of any material information that would reasonably be expected to affect the value of its securities or influence investors' decisions." Ex. V. Information is material "if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote" and "would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988); *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 248 (5th Cir. 2009).

Here, if Bright Data was successful in obtaining an injunction against NetNut, NetNut may have had to cease operations in the United States, leaving Safe-T's investors holding significantly devalued investments. Ex. O ¶ 22; Ex. N ¶ 16. Similarly, if the settlement required a large financial payment or royalty, Safe-T's continued operations would be jeopardized. Ex. O ¶ 22; Ex. N ¶ 16. The detrimental impact of any payment obligations is underscored by the fact that Safe-T reported a net loss of $13,125,000 and $7,845,000 in its annual report for 2021 and 2020, respectively. Ex. H at 46. Therefore, ███████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ █████████ would certainly alter the "total mix" of information and would be considered ***material*** to a reasonable investor. The outcome of such litigation must be disclosed under NASDAQ rules, Form 6-K, and general securities principles imposing a duty to tell the whole truth. *See Meyer v. Jinkosolar Hldgs. Co.*, 761 F.3d 245, 250 (2d Cir. 2014) ("once a company speaks on an issue or topic, there is a duty to tell the whole truth."); *In re ArthroCare Corp. Sec. Litig.*, 726 F. Supp. 2d 696, 716 (W.D. Tex. 2010) (same) (citing *Rubinstein v. Collins*, 20 F.3d 160, 170 (5th Cir. 1994)). These legal requirements were met here by Safe-T's identical disclosure approaches in *Bright Data I* and *II*.

Courts routinely recognize that disclosure obligations required by law do not breach

confidentiality provisions with such a carve out. For example, in *In re Hi-Crush Partners L.P. Sec. Litig.*, Hi-Crush and Baker Hughes entered into a contractual agreement (later amended) which included a confidentiality provision that stated "Except as otherwise provided under this Agreement or as may be required by law or regulation, neither Party, without the prior written consent of the other Party, will disclose to any other Person [ ] the fact that this Agreement exists . . ." No. 12 CIV. 8557 CM, 2013 WL 6233561, at *1 (S.D.N.Y. Dec. 2, 2013) (modification in original). As Hi-Crush prepared for its initial public offering, they attached redacted versions of the original and amended agreement as exhibits to the Registration Statement, as required by SEC Regulation S-K. *Id.* at *2. As a result of this disclosure, Baker Hughes terminated the agreement, which led to a significant drop in Hi-Crush's stock price and precipitated a securities class action lawsuit alleging claims under the Securities Act of 1933 and the Securities Exchange Act of 1934. *Id.* at *4. Plaintiffs alleged, among other things, that Hi-Crush's failure to disclose that it breached the confidentiality clause constituted a material omission under the securities law. *Id.* at *8. The court rejected this contention, noting that because Item 601 of Regulation S-K required registrants to attach any material exhibits to the registration statement, this disclosure "did not violate the confidentiality provision of the agreement" since disclosure was "required by law or regulation." *Id.* at *9.[4]

██████████████████████████████████████████████

███████████████████████████████████████  . Dkt. 56 at 7.  ███████████

██████████████████████████████████████████████

---

[4] *See also Duse v. Int'l Bus. Machines Corp.*, 252 F.3d 151, 163 (2d Cir. 2001) (IBM's Form 1099, which reported amount of settlement of earlier litigation, "did not breach the provision of the Settlement Agreement that stated that IBM would disclose the settlement amount only 'as may be required by law or by business necessity.'"); *Peskoff v. Faber*, 233 F.R.D. 207, 209 (D.D.C. 2006) (testifying pursuant to subpoena was not barred where settlement confidentiality provision provided for disclosures "when required by law.").

███████████████████████████████████████

███████████████████████████████████████████████. Ex. E ¶ 12. ████

██████████████████████████████████████████████████████████. Safe-

T chose to significantly limit what it disclosed to only what was absolutely required under the law,

an objectively reasonable course of action.

Additionally, Bright Data complains that Safe-T's disclosure "within days of the closing of

the litigation" was intended to maximize the impact on Bright Data. Dkt. 156 at 12. However, Form

6-K and NASDAQ rules require disclosures be made "promptly." While neither set of rules define

promptly, Form 8-K (the 6-K equivalent for domestic companies) provides that registrants must file

or furnish a report "within four business days after occurrence of the event" giving rise to the need

to file a report. Ex. W at 3. Safe-T's disclosures were thus prompt as required by law.[5]

### 2. The IP Law360 Article Contains Less Information Than the Form 6-K

Beyond Safe-T's Form 6-K (Ex. F) and corresponding press release (Ex. G) of May 19, 2022,

Bright Data complains of an IP Law360 article. This article contains much less information, ████

███████████████████████████ Dkt. 156, Ex. B. There has been no disclosure regarding

the parties' settlement that extends beyond Safe-T's required Form 6-K filing.

### C. There Has Been No Violation of the Protective Order

████████████████████████████████████████████████████████

████████████████████████████████████████████████. Dkt. 156 at

7-8. Bright Data's attempt fails for two reasons. First, ████████████████████████

---

[5] Bright Data's false allegations regarding "selective disclosure" (Dkt. 156 at 2) are disproven by
Safe-T's disclosures themselves, █████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
██████████████████ Ex. F at 1; Ex. N ¶ 18. Further, NetNut asked Bright Data whether it would
consent to the whole settlement agreement being publicly filed. Bright Data declined.



Ex. E ¶ 12.  Second, because ***all*** of the information Bright Data complains of was lawfully and permissibly disclosed in Safe-T's Form 6-K filing (*supra* § II.B), there can be no violation of the protective order, even if it did apply.

The protective order does not apply ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮  *Cf. Wash. Nat. Ins. Co. v. Jefferies & Co., Inc.*, No. 89 C 2216, 1992 WL 186057, at *1 (N.D. Ill. July 27, 1992) (declining to find protective order violation and finding "the Court does note that the settlement agreement does not even refer to the protective order even though it contains a substantial and detailed paragraph entitled 'Confidentiality'"); *VanLeeuwen v. Farm Credit Admin.*, 600 F. Supp. 1173, 1177 (D. Ore. 1984) (declining to find breach of settlement agreement and noting "[t]he protective order is not a part of the settlement agreement."). ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*compare* Ex. E ¶ 12, *with* Dkt. 58 ¶ 6), ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[6]

Nor would it make sense for the protective order to override the settlement agreement's confidentiality provisions.  The Federal Rules allow courts to issue protective orders to govern "discovery" in litigation.  Fed. R. Civ. P. 26(c)(1); *see also Wi-Lan, Inc. v. Acer, Inc.*, No. 2:07-cv-473, 2009 WL 1766143, at *2 (E.D. Tex. June 23, 2009) (protective orders may issue for protections "in discovery").  "As a general proposition, a district court can exercise its sound discretion in

---

[6] For example, Bright Data alleges that NetNut was limited to only three designated employees (Dkt. 156 at 7), but that is incorrect ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Ex. E ¶ 12.

██████████████████████████████

determining how far to restrict discovery[.]" *Nguyen v. Excel Corp.*, 197 F.3d 200, 209 n.27 (5th Cir. 1999). Here, the protective order governs discovery and applies to "Protected Material obtained by any party pursuant to discovery in this litigation." Dkt. 58 ¶ 1. All of the information Bright Data complains of was not obtained pursuant to discovery in the litigation, but rather is part of the settlement agreement itself and, thus, governed by its terms. *Supra* § II.B; *see generally* Dkt. 156 (alleging all counts under purported "breach" of settlement agreement).

Even if the protective order did apply, there can be no violation because the protective order *excludes* permitted disclosures from its scope. The protective order states that "[a]ny information that is or, after its disclosure to a receiving party, becomes part of the public domain as a result of publication not involving a violation of this [Protective] Order or other obligation to maintain the confidentiality of such information" "is not Protected Material." Dkt. 58 ¶ 5. Because the disclosures did not violate the settlement agreement (*supra* § II.B), they cannot be "Protected Material" subject to the protective order, even if the protective order did apply (which it does not).

Bright Data's protective order arguments all circle back to the propriety of Safe-T's Form-6K filing pursuant to the settlement agreement. For example, Bright Data argues that "NetNut did not request Bright Data's permission to disclose Bright Data's confidential information" and this violates the protective order. Dkt. 156 at 7. Bright Data makes the same argument regarding Safe-T's press release and the IP Law360 article. *Id.* ███████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████ Ex. E ¶ 12, and that Form 6-K filing contains *all* of the information to which Bright Data objects. Because Safe-T acted as required by law in making that Form 6-K disclosure, the protective order imposes no further restrictions on such public information. Dkt. 58 ¶ 5.

██████████████████████████████

### D. Bright Data's Strained Harm Arguments Make No Sense

All of the harm Bright Data alleges (Dkt. 156 at 12-13) is not only speculative and unsubstantiated, but legally moot. As discussed above (*supra* §§ II.B – II.C), Safe-T's May 19, 2022 Form 6-K filing was required by law and authorized by the settlement agreement. Because that filing contains all of the information Bright Data challenges, and was lawfully made public, Bright Data can claim no harm based on the information contained in it. And as discussed above, the timing of Safe-T's disclosures was mandated by law, not any ill intent toward Bright Data. *Supra* § II.B.1. ████████████████████████████ Ex. N ¶¶ 19-20.

Bright Data's suggestion that disclosure of this information interfered with its mediation involving "defendants in the Teso, Code200 and Tefincom cases" is further flawed. Dkt. 156 at 12. Bright Data appears to suggest that, but for the disclosure of the challenged information, it would have withheld this information from even outside counsel in these litigations, contrary to its discovery obligations. Such an improper "harm" theory cannot be accepted. Bright Data has not shown and cannot show any harm. *See Paice LLC v. Hyundai Motor Co.*, No. WDQ-12-499, 2015 WL 13594450, at *2 (D. Md. May 5, 2015) (declining to find contempt for alleged protective order violation where no showing of "harm" was made).

### E. Discovery is Not Warranted

Bright Data's request for discovery (Dkt. 156 at 12-13, 15) should be denied because all of the information it complains was improperly disclosed—including Safe-T's Form 6-K filing, Safe-T's press release, and the IP Law360 article—was contained in a lawfully issued Form 6-K filing (Ex. F). Bright Data has not challenged any disclosure beyond the information set forth in this Form 6-K filing and thus there is no purpose for any discovery.

Given the baseless nature of Bright Data's motion and the harm it has caused, NetNut respectfully reserves its right to seek its attorneys' fees for responding to this motion.

██████████████████████████

Dated:  May 31, 2022      By:     */s/ Eric H. Findlay*

Eric H. Findlay (TX Bar No. 00789886)
Debby Gunter (TX Bar No. 24012752)
FINDLAY CRAFT, P.C.
102 North College Avenue, Suite 900
Tyler, Texas 75702
Tel: (903) 534-1100
Fax: (903) 534-1137
Email: efindlay@findlaycraft.com
Email: dgunter@findlaycraft.com

Elliot C. Cook
Denise A. Golumbaski
David Lefcowitz
Finnegan, Henderson, Farabow,
Garrett & Dunner, LLP
1875 Explorer St., Suite 800
Reston, VA 20190
Tel: (571) 203-2738
Fax: (202) 408-4400
elliot.cook@finnegan.com
denise.golumbaski@finnegan.com
David.Lefcowitz@finnegan.com

Cory C. Bell
Finnegan, Henderson, Farabow,
Garrett & Dunner, LLP
Two Seaport Lane
Boston, MA 02210-2001
Tel: (617) 646-1641
Fax: (202) 408-4400
cory.bell@finnegan.com

C. Gregory Gramenopoulos
Alissa E. Green
Finnegan, Henderson, Farabow,
Garrett & Dunner, LLP
901 New York Ave.
Washington, DC 20001
Tel: (202) 408-4305
Fax: (202) 408-4400
c.gregory.gramenopoulos@finnegan.com
alissa.green@finnegan.com

Kevin D. Rodkey

16

Troy Viger
Finnegan, Henderson, Farabow,
Garrett & Dunner, LLP
271 17th St. NW
Suite 1400
Atlanta, GA 30363
Tel: (404) 653-6484
Fax: (202) 408-4400
kevin.rodkey@finnegan.com
troy.viger@finnegan.com

***Attorneys For***
***Defendant NetNut Ltd.***


## CERTIFICATE OF SERVICE

I hereby certify that on May 31, 2022 , a true and correct copy of the foregoing document

was electronically filed in compliance with Local Rule CV-5(a) and was served on all counsel who

are deemed to have consented to electronic service, per Local Rule CV-5(a)(3).


*/s/ Eric H. Findlay*
Eric H. Findlay