# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| BRIGHT DATA LTD.,<br><br>*Plaintiff,*<br><br>v.<br><br>NETNUT LTD.,<br><br>*Defendant.* | Case No. 2:21-CV-00225-JRG-RSP<br><br>█████████████ |

**PLAINTIFF BRIGHT DATA'S REPLY PURSUANT TO COURT ORDER (DKT NO. 176) IN SUPPORT OF ITS MOTION FOR CORRECTIVE ACTIONS AND SANCTIONS FOR VIOLATION OF PROTECTIVE ORDER AND ABUSE OF SETTLEMENT <u>PROCESS</u>**

# TABLE OF CONTENTS

A. Securities Law Did Not Require NetNut or the Finnegan Firm to Issue Their Press Releases .................................................................................................................... 2

B. NetNut Cannot Argue That the Protective Order Did Not Apply to the Settlement Agreement As the "CONFIDENTIAL" Designation Was Clear and Both Sides Relied Upon It During the Settlement Negotiations and Resulting Settlement ............................... 3

C. NetNut's Previous Breaches of Confidentiality of the November 8, 2021 NetNut I Settlement Does Not Justify the Breach of the May 15, 2022 Settlement of NetNut II ...... 4

# TABLE OF AUTHORITIES

**Cases**

*Basic Inc. v. Levinson*, 485 U.S. 224 (1988)................................................................................ 2

*Crawford v. Senex Law P.C.*, 2022 U.S. Dist. LEXIS 49645 (W.D. Va. March 21, 2022) ........... 4

*In re Hi-Crush Partners L.P. Sec. Litig.*, 2013 U.S. Dist. LEXIS 17110 (S.D.N.Y. Dec. 2, 2013)2

*Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011) ............................................................ 2

*Republic Ins. Co.v PAICO Receivables LLC*, 383 F.3d 341 (5th Cir 2004)..................................... 4

*VanLeeuwen v. Farm Credit Admin,* 600 F. Supp. 1173 (D. Or. 1984) .......................................... 4

*Wash. Nat. Ins. Co. v. Jefferies & Co.*, 1992 U.S. Dist. LEXIS 11292 (N.D. Ill. July 27, 1992) .. 4

NetNut unequivocally violated the confidentiality afforded under the Protective Order and Settlement Agreement. It did so just days after entering the settlement and less than 48 hours after Bright Data moved to dismiss its cases. If parties can blatantly ignore confidentiality, no rational party in this district would ever enter into a confidential settlement, so Bright Data asks the Court to protect that process. NetNut's arguments do not explain or excuse its flagrant violations. Bright Data settled this case based on representations recited in the agreement that ▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓ But none of that is evident through the misleading, one-sided, and unnecessary press releases and interviews NetNut and its counsel made public.

NetNut's parent Safe-T ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ did not need to disclose settlement terms to meet SEC requirements. Moreover, NetNut had agreed that ▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓ It did no such thing. NetNut certainly did not need to issue a press release or give interviews to the press as did the Finnegan firm. The damage was immediate. The same day the press releases issued, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. R at 1-2. Despite this immediate notice, NetNut and Finnegan failed to effect any remedial changes and the disclosed confidential settlement terms remain publicly available. NetNut and Finnegan's complete disregard for the protections afforded by the Court undermines the ability of parties to enter settlements and the Court's interest in parties resolving disputes without Court intervention.

### A. Securities Law Did Not Require NetNut or the Finnegan Firm to Issue Their Press Releases

NetNut and Finnegan improperly attempt to use securities regulations as a shield to allow them to selectively disclose confidential terms favorable to NetNut. As a publicly-traded company, NetNut's parent Safe-T Group Ltd. must disclose "material legal proceedings." Def. Ex. U at 2. However, Safe-T already did so when, for example, it expressly disclosed the Bright Data lawsuit in a Form 20-F filing on March 29, 2022. Dkt. 168-9 at 17.

Having already disclosed the Bright Data v. NetNut litigation in the 20-F filing, NetNut had no obligation to further disclose confidential terms from a resulting Settlement.[1] Ex. O at 1. As addressed in Bright Data's objections to NetNut's self-serving declarations from Shachar Daniels and Hagit Gal, neither declarant is an expert witness or even a U.S. lawyer. Dkt. 169. In contrast, as addressed in the supporting declaration from Robert Evans, former Chief of the Office of International Corporate Finance, Securities and Exchange Commission Division of Corporate Finance, Safe-T Group met its disclosure requirements through its March 29th Form 20-F filling and met its obligation to update through its May 31st Form 6-K filing. Ex. Q at 1-2, Ex. O at 1. Safe-T had no obligation to disclose for example that ████████████████████████

---

[1] NetNut's reliance on *Basic Inc. v. Levinson*, 485 U.S. 224, 231-232 (1988), is misplaced. As emphasized in *Matrixx*, "§ 10(b) and Rule 10b-5(b) ***do not*** create an affirmative duty to disclose any and all material information. Disclosure is required under these provisions only when necessary 'to make… statements made, in the light of the circumstances under which they were made, not misleading[']…. [C]ompanies can control what they have to disclose under these provisions by controlling what they say to the market." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44-45 (2011)(internal citations omitted). If anything, the press release itself was misleading and will require correction to update investors as to the "total mix of information," since it left out key information about ████████████████████████
████████████████████████ Similarly, *In re Hi-Crush Partners L.P. Sec. Litig* is inapposite as that case involved a securities registrant filing a redacted copy of a confidential agreement in response to a letter from the SEC specifically directing the registrant to file the same. 2013 U.S. Dist LEXIX 171110, *27 (S.D.N.Y. Dec. 2, 2013).

2

██████████████████████████████████████████████████████████████████ Without disclosing any confidential information, Safe-T could have filed an update indicating that the dispute had been resolved.[2] Ex. O at 2.

In addition, **under the securities laws[3], Safe-T had no obligation to issue a press release of any kind**. Ex. O at 2. Clearly, Safe-T filed its press release concurrently with the SEC in an improper attempt to circumvent the confidentiality of the Settlement. Such disclosure was a violation of the Protective Order as well as the Settlement Agreement, which required ████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████ Ex. A at 3.

B. *NetNut Cannot Argue That the Protective Order Did Not Apply to the Settlement Agreement As the "CONFIDENTIAL" Designation Was Clear and Both Sides Relied Upon It During the Settlement Negotiations and Resulting Settlement*

The Settlement Agreement is clearly designated ████████████████████████████ ████████████████████████████████████████ as were the related preceding negotiations and written drafts. Ex. A at 1. Despite this designation, NetNut now makes the baseless argument that the Protective Order only protects "discovery." Dkt. 172 at 14. This argument is clearly wrong and contrary to the express language of the Protective Order. While the Protective Order includes discovery, it is clearly broader in scope as it expressly states in paragraph 4, "this Order governs, without limitation … stipulations." Dkt. 58 at 2-3. Further, NetNut's argument is clearly baseless as both parties relied upon the ████████████ designations to protect the settlement negotiations and resulting Settlement. The Parties

---

[2] On May 31, 2022 Safe-T filed a 6-K disclosing its CEO Shachar Daniel as stating "we are pleased to announce the settlement and dismissal of our outstanding patent litigation, which is expected to contribute, together with our cost reduction plan, to a significant reduction in the Company's overall general and administration costs in the third quarter of 2022 and onward." Ex. Q at 1.

[3] With regard to NASDAQ, "materiality" under NASDAQ's rules is the same as under the securities laws. Ex. O at 1.

understood these protections to apply, consistent with the designation, and would not have engaged in these talks and entered the Settlement without such protections.

NetNut argues that the Settlement Agreement limits the scope of the Protective Order. That is wrong, and none of the cases cited by NetNut required arbitration in the face of breach of a Protective Order.[4] Separate from a settlement agreement's confidentiality provisions, courts have an independent authority to interpret, modify, and/or enforce their own Protective Orders. *See e.g. Crawford v. Senex Law P.C.*, 2022 U.S. Dist. LEXIS 49645, *18-19 (W.D. Va. March 21, 2022). Similarly, settlement terms cannot preclude a Court from exercising its inherent power to control its docket. *See Republic Ins. Co.v PAICO Receivables LLC*, 383 F.3d 341, 348-349 (5th Cir 2004) (Denying motion to compel arbitration despite settlement agreement arbitration clause with "no waiver" provision). Neither the Protective Order nor the Settlement Agreement include any terms proscribing the applicability of the Protective Order and NetNut has identified no such provisions. Such a limitation would make no sense. There is no dispute that NetNut's counsel of record, Finnegan, is subject to the Protective Order and barred from disclosing Bright Data's confidential information. However, as Finnegan is not a party to the Settlement, the arbitration provision could not apply to Finnegan. Under NetNut's argument, Finnegan would be bound by the Protective Order during negotiations, but freely able to violate the confidentiality of the Settlement as soon as it was executed. Such an argument is clearly meritless and contrary to the Protective Order.

C. *NetNut's Previous Breaches of Confidentiality of the November 8, 2021 NetNut I Settlement Does Not Justify the Breach of the May 15, 2022 Settlement of NetNut II*

---

[4] NetNut takes *Wash. Nat. Ins. Co. v. Jefferies & Co., Inc.* out of context as that court expressly found that there was no disclosure of "confidential information" under the protective order. 1992 U.S. Dist. LEXIS 11292, *2-4 (N.D. Ill. July 27, 1992). Similarly, *VanLeeuwen v. Farm Credit Admin.* is inapposite because that court recognized that a protective order could be violated separate from the settlement agreement. 600 F.Supp. 1173, 1177 (D. Or. 1984)("The protective order is not a part of the settlement agreement. **Violation, if there was one**, does not justify setting aside the judgment.") (emphasis added)

4

Having been caught broadly publishing confidential terms of the Settlement through its one-sided press release, NetNut wrongly asserts that its current breach of the Protective Order and the May 15, 2022 Settlement of this case is permitted because NetNut previously disseminated confidential terms of the November 8, 2022 settlement.  That argument is without merit.  First, NetNut never notified Bright Data of its disclosure of confidential terms from the first settlement and Bright Data only learned of this first disclosure after discovering NetNut's disclosure of the confidential settlement at issue here.  Having failed to notify Bright Data of its disclosures regarding the first settlement, NetNut cannot assert that Bright Data consented to any such disclosure or otherwise waived any rights to enforce the confidentiality of the Settlement Agreement under the Protective Order and express terms of the Settlement Agreement itself.

In addition, NetNut never made a written request that Bright Data remove its confidentiality designation of the settlement terms at issue, as permitted under paragraph 19 of the Protective Order.  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. A at 3 (emphasis added). There is no dispute that Bright Data did not authorize NetNut or Finnegan to disclose this confidential information.

Neither NetNut nor Finnegan have effected any corrections, including the removal of confidential Settlement terms from still public SEC filings and publications.  Bright Data requests that the Court grant any and all sanctions that the Court deems appropriate.

5

| | |
|---|---|
| Dated: June 14, 2022 | Respectfully submitted, |
| | By: /s/ Ronald Wielkopolski |

Elizabeth L. DeRieux
State Bar No. 05770585
Capshaw DeRieux, LLP
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: 903-845-5770
ederieux@capshawlaw.com

J. Mark Mann
G. Blake Thompson
Mann | Tindel | Thompson
300 West Main
Henderson, TX 75652
mark@themannfirm.com
blake@themannfirm.com
Office 903-657-8540
Marshall Office 903-472-4294
Tyler Office 903-596-0900
Waco Office 254-776-3336

Korula T. Cherian
Robert Harkins
Cherian LLP
1936 University Ave, Ste. 350
Berkeley, CA  94704
sunnyc@cherianllp.com
bobh@cherianllp.com

Thomas M. Dunham
Ronald Wielkopolski
J. Michael Woods
Cherian LLP
1901 L St. NW, Suite 700
Washington, DC 20036
tomd@cherianllp.com
ronw@cherianllp.com
michaelw@cherianllp.com

***Attorneys for Plaintiff
Bright Data Ltd.***

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served this 14th day of June 2022, with a copy of this document via CM/ECF.

/s/ Ronald Wielkopolski

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document is being filed under seal pursuant to the Protective Order entered in this case.

/s/ Ronald Wielkopolski