# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| BRIGHT DATA LTD.<br><br>   *Plaintiff,*<br><br> v.<br><br>NETNUT LTD.<br><br>   *Defendant.* | Case No. 2:21-CV-00225-JRG-RSP<br><br>███████████ |

# BRIGHT DATA'S SUPPLEMENTAL BRIEFING PURSUANT TO COURT ORDER (DKT NO. 182) IN SUPPORT OF ITS MOTION FOR CORRECTIVE ACTIONS AND SANCTIONS FOR VIOLATION OF PROTECTIVE ORDER AND ABUSE OF <u>SETTLEMENT PROCESS</u>

# TABLE OF CONTENTS

1. The Protective Order Remains Enforceable After Dismissal of the Action ............ 2
2. The Settlement Agreement is Subject to the Protective Order Including ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ............................. 5
3. The Securities Laws Did Not Require NetNut or the Finnegan Firm to Issue Press Releases or Otherwise Disclose Confidential Terms of the Settlement Agreement ................ 6
   A. According to Bright Data's Expert Robert Evans, Safe-T Group Was Not Obligated to Disclose Confidential Settlement Agreement Terms Under U.S. Securities Laws ........ 8
   B. Safe-T Group's May 19th Disclosure about the Settlement Agreement Was Not Required to Avoid Violation of U.S. Securities Laws, and if it Was Going to Disclose, It Was Not Permitted to Issue a One-Sided Disclosure ................................................ 10
   C. Safe-T Group's Disclosures Regarding a Separate Settlement for a Separate Litigation Are Irrelevant to Safe-T's Disclosure Requirements Regarding the Settlement Agreement in this Case ...................................................................................... 12
   D. NetNut's Supporting Evidence of Third-Party Disclosures Regarding Settlements Is Irrelevant to Safe-T's Disclosure Requirements Regarding the Settlement Agreement in this Case ...................................................................................... 12
   E. Safe-T Group's Listing on the Nasdaq and Tel-Aviv Stock Exchanges Does Not Impose a Different Materiality Requirement ................................................. 13
   F. U.S. Securities Laws Impose No Requirement to Issue a Press Release ...................... 13
4. The Court Has the Authority to Grant Relief Including Ordering Sanctions Against NetNut and Its Counsel, Dissemination of the Same Order to the SEC and Medai Outlets, NetNut's Payment of Bright Data's Fees and Costs Associated With This Motion, and Any Other Appropriate Relief ............................................................................ 14

# TABLE OF AUTHORITIES

**Cases**

*Crawford v. Senex Law P.C.*, 2022 U.S. Dist. LEXIS 49645 (W.D. Va. March 21, 2022) ........... 4

*Firefighters Pension & Relief Fund v. Bulmahn*, 147 F. Supp. 3d 493 (E.D. La. 2015).............. 14

*In re Cylink Sec. Litig.*, 178 F. Supp. 2d 1077 (N.D. Cal. 2001) .................................................. 14

*In re Hi-Crush Partners L.P. Sec. Litig.*, 2013 U.S. Dist. LEXIS 17110 (S.D.N.Y. Dec. 2, 2013*)* ................................................................................................................................................. 10

*In re Parametric Tech. Corp. Sec. Litig.*, 300 F. Supp. 2d 206 (D. Mass. March 29, 2001).......... 8

*Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011) ............................................... 8, 10, 12

*Pers. Audio, LLC v. Apple, Inc.*, 2011 U.S. Dist. LEXIS 146756 (E.D. Tex. 2011) .................... 15

*Poliquin v. Garden Way*, 989 F.2d 527 (1st Cir. 1993) ................................................................. 2

*Positive Software Solutions, Inc. v. New Century Mortg. Corp.*, 619 F.3d 458, 461 (5th Cir 2010) ................................................................................................................................................... 4

*Republic Ins. Co.v PAICO Receivables LLC*, 383 F.3d 341 (5th Cir 2004) .................................... 4

*Van Leeuwen v. Farm Credit Admin,* 600 F. Supp. 1173 (D. Or. 1984) ........................................ 4

*Wash. Nat. Ins. Co. v. Jefferies & Co.,* 1992 U.S. Dist. LEXIS 11292 (N.D. Ill. July 27, 1992) .. 4

*Yates v. Applied Performance Techs. Inc.*, 205 F.R.D. 497 (S.D. Ohio Jan. 14, 2002) ................. 3

As directed by the Court's June 17, 2022 Order (Dkt. 182), Bright Data files this brief addressing the following issues: (1) Whether the Court's Protective Order is enforceable after the Court entered its Order dismissing the case; (2) Whether the Confidential Settlement Agreement is subject to the Protective Order; (3) Whether the securities laws of the United States, or other applicable laws, required NetNut[1] to disclose the particular details of the Confidential Settlement Agreement that Bright Data contends violated the Protective Order; and (4) What relief is appropriate if a violation is found.

First, as addressed below, there should be no reasonable dispute that the Court's Protective Order remains enforceable after the Court's entry of its Order dismissing the case, including because key provisions of the Protective Order would be rendered inoperable if the Protective Order terminated as of the dismissal date. Second, the Confidential Settlement Agreement is protected material under the Protective Order. ████████████████████████████████████████████████████████████████████████████████████████████. Bright Data did so understanding that the Protective Order was the only basis for protection with regard to the earlier drafts and against disclosure by the Finnegan firm, a non-party to the Settlement Agreement.

Third, with regard to U.S. securities laws, this is a matter of law for the Court and not subject to the factual evidence.[2] As a matter of law, the Supreme Court has held that a company need not disclose all material terms of a settlement agreement. As confirmed by Robert Evans, a former Chief of the Office of International Corporate Finance, Securities and Exchange Commission Division of Corporation Finance, which is responsible, in part, for advising non-US

---

[1] Consistent with earlier briefing, as used herein, "NetNut" includes its corporate parent.
[2] Thus, Bright Data notes that it believes an evidentiary hearing to be unnecessary to answer the purely legal question of whether securities law require a party to provide details of a confidential settlement agreement—that should be ruled on as a matter of law.

companies on compliance with the SEC's disclosure requirements, NetNut was not required to disclose specific confidential terms of the Settlement Agreement. NetNut's assertion that it was just doing what was required under the securities laws is clearly a sham—NetNut had agreed to ███████████████████████████████████████████████████████ ███████. It is beyond reasonable dispute that it did neither, instead immediately upon Bright Data's filing for dismissal of the cases NetNut issued two press releases (one itself and one from its counsel) and its counsel gave public statements to the press.

Finally, NetNut's unauthorized disclosure of Bright Data's confidential information through widely disseminated press releases by its parent company and counsel of record has ███████████████████████████████████████████████████████ ████████████████████. While there is no remedy that can make Bright Data whole, in order to offset some of the harm, the Court could issue a sanctions order against NetNut and its counsel of record, requiring (a) the same to be filed with the SEC and disseminated to the same outlets that were sent the press releases, (b) payment of Bright Data's costs and fees associated with the filing of this motion; and (c) any other relief the Court finds appropriate. Given that NetNut's egregious, immediate public disclosure would dissuade any parties from settling cases in this Court in the future if there are not serious consequences, such other relief could include an additional monetary sanction in an amount deemed by the Court sufficient to deter such conduct in the future.

1. **The Protective Order Remains Enforceable After Dismissal of the Action**

There is no real dispute that the Court has the authority to enforce its Protective Order after dismissal of the case. *Poliquin v. Garden Way*, 989 F.2d 527, 535 (1st Cir. 1993) ("[A] protective order, like any ongoing injunction, is always subject to the inherent power of the district court to relax or terminate the order, even after judgment."); *Yates v. Applied Performance Techs. Inc.*, 205 F.R.D. 497, 500 (S.D. Ohio Jan. 14, 2002) ("[T]here seems to be little doubt that a protective order

issued by a court, either state or federal, which on its face survives the underlying litigation, continues to have full force and effect on the parties subject to it even after the final resolution of the underlying case, and the issuing court retains jurisdiction and authority to modify or revoke it."). The Protective Order (Dkt. 58) itself does not expire with dismissal of the action, and such an expiration date would directly contradict the express prohibitions of the Protective Order itself. The Protective Order includes terms that only come into force after termination. For example, the Protective Order requires the parties to act after the final termination of the Action including appeals that may require action years after the case is concluded:

> "**Within thirty (30) days of the later of the final termination of this Action and any Related Proceeding, including any appeals,** all DESIGNATED MATERIAL…shall… be returned… or be destroyed. The receiving Party shall verify the return or destruction by affidavit furnished to the producing party…."
>
> Ex. S, Dkt. 58 at ¶ 23 (emphasis added); *see also id.*, ¶ 12 (patent prosecution bar continues to apply "**during the pendency of this Action and for one year after its conclusion**, including any appeals." (emphasis added)).

Notably, the violation of the Protective Order in this case occurred not 30 days or a year or more of the dismissal order, but within 2 days. Were the Court barred from enforcing its own Protective Order after dismissal, a party could simply ignore important provisions of the Order that can only occur after the case is terminated. Instead, as noted by the appellate court in *Poliquin,* the Court retains the authority to oversee its Protective Order after the case is otherwise concluded.

During the June 16, 2022 hearing, NetNut's counsel conceded that a Protective Order still applies even after dismissal.[3] Ex. T at 28:21-29:3. NetNut also argues that the Settlement

---

[3] NetNut's counsel separately relied upon *Positive Software Solutions, Inc. v. New Century Mortg. Corp.* (cited for the first time during the June 16, 2022 hearing) for the proposition that this case bars the Court from ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. T at 29:19-30:8. However, that case is inapposite. Unlike the instant case which involves the violation of this Court's Protective Order, in *Positive Software* ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

3

Agreement limits the scope of the Protective Order ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. That is wrong, and none of the cases cited by NetNut ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ in the face of breach of a Protective Order.[4] Separate from a settlement agreement's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, courts have an independent authority to interpret, modify, and/or enforce their own Protective Orders. *See e.g. Crawford v. Senex Law P.C.*, 2022 U.S. Dist. LEXIS 49645, *18-19 (W.D. Va. March 21, 2022). Similarly, ▮▮▮▮▮▮▮▮▮▮▮ cannot preclude a Court from exercising its inherent power. The Fifth Circuit has affirmed the denial of a plaintiff's motion to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, despite plaintiff moving ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮, based on the court's inherent power to control its docket. *Republic Ins. Co. v PAICO Receivables LLC*, 383 F.3d 341, 348-349 (5th Cir 2004) ("The inclusion of a 'no waiver' clause in a contract does not eliminate the district court's inherent power to control its docket. In this case the Settlement Agreement's 'no waiver' clause is not sufficient overcome the district court's exercise of its inherent authority in light of Republic's extensive use of the judicial process."). Neither the Protective Order nor the Settlement Agreement include ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and NetNut has identified no such provisions.

In addition, there is no dispute that NetNut's counsel of record, Finnegan, is subject to the Protective Order and barred from disclosing Bright Data's confidential information. This motion

---

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ 619 F.3d 458, 461 (5th Cir 2010) (emphasis added).

[4] NetNut takes *Wash. Nat. Ins. Co. v. Jefferies & Co., Inc.* out of context as that court expressly found that there was no disclosure of "confidential information" under the protective order. 1992 U.S. Dist. LEXIS 11292, *2-4 (N.D. Ill. July 27, 1992). Similarly, *VanLeeuwen v. Farm Credit Admin.* is inapposite because that court recognized that a protective order could be violated separate from the settlement agreement. 600 F.Supp. 1173, 1177 (D. Or. 1984)("The protective order is not a part of the settlement agreement. **Violation, if there was one**, does not justify setting aside the judgment.") (emphasis added).

4

is against both NetNut and its counsel each for their own violation of the Protective Order. Finnegan is not a party to the Settlement, ▓▓▓▓. Under NetNut's argument, Finnegan would be bound by the Protective Order during negotiations, but freely able to violate the confidentiality of the Settlement as soon as it was executed. Such an argument is clearly meritless and contrary to the Protective Order.

The Court has the ability to enforce its Protective Order, which is appropriate including in this situation, where a party and its counsel of record issue press releases disclosing confidential information in violation of the Protective Order within days of dismissal.

**2. The Settlement Agreement is Subject to the Protective Order Including Because ▓▓▓▓**

The Settlement Agreement is subject to the Protective Order including because Bright Data clearly ▓▓▓▓. As represented by Bright Data's lead counsel multiple times during the June 16 hearing, the Settlement Agreement ▓▓▓▓ Ex. T at 15:20-21; *see also* 17:5-16.

Pursuant to the Protective Order, "Protected Material shall be designated by the Party producing it by affixing a legend or stamp on such document, information or material as follows: "CONFIDENTIAL." Ex. S, Dkt. 58 at ¶ 2. There is no dispute that the Settlement Agreement ▓▓▓▓ Ex. A at 1.

▓▓▓▓ For example, ▓▓▓▓

5

███████████ Ex. U at 1. On May 13, 2022, ██████████████████████████

████████████████████████████████████████████████████████████████

███████████. Ex. V at 1.

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████, NetNut makes the baseless argument that the Protective Order only protects "discovery." Dkt. 172 at 14; *See also* Ex. T at 27:1-10. This argument is clearly wrong and contrary to the express language of the Protective Order.[5] While the Protective Order applies to discovery, it is broader in scope as it expressly governs "documents, information or material designated "CONFIDENTIAL"…." Ex. S, Dkt. 58 at ¶ 4. Bright Data relied upon ████████████████████████ for protection under the Protective Order and the Settlement Agreement should receive the benefit of that protection.

### 3. The Securities Laws Did Not Require NetNut or the Finnegan Firm to Issue Press Releases or Otherwise Disclose Confidential Terms of the Settlement Agreement

There is no dispute that NetNut disclosed information that was confidential to this lawsuit. Its singular defense is that its parent company Safe-T Group ████████████████ ████████ was required to disclose the information to comply with the US securities laws.

---

[5] NetNut relies upon paragraph 18 of the Protective Order, but that paragraph references pretrial discovery in the context of clarifying that "[n]othing in this Order shall be deemed to prevent the Parties from introducing any DESIGNATED MATERIAL into evidence at the trial of this Action." Ex. S, Dkt. 58 at ¶ 18. The paragraph does not limit the scope of DESIGNATED MATERIAL under the Protective Order.

6

However, the dispute here is not whether NetNut had to report that the lawsuit was settled or dismissed – both sides agree that the fact of dismissal with prejudice was a public fact in the Court record. Instead, the issue is whether NetNut was required to go beyond simply reporting that the case was over and specifically had to report all of the details it opted to include in a press release (and whether a press release was a required method of making its disclosure). NetNut (including Safe-T) made a reasonable disclosure that did not reveal confidential settlement terms later in its May 31, 2022 Form 6-K disclosure, which noted that there was a Settlement Agreement and that the ongoing litigation was dismissed. The filing of the press release on May 19, 2022 with the SEC was not required—the press release was filed with the SEC to provide cover for NetNut's decision to violate the Protective Order and make public confidential settlement terms.

The SEC's disclosure rules for public companies under the Securities Exchange Act of 1934 do not impose a "continuous disclosure" requirement. The rules impose periodic disclosure requirements, such as (for non-US companies like Safe-T Group) the Form 20-F annual report and an update for semi-annual financial statements. Here, where Safe-T Group makes a practice of filing quarterly financial statements, it files more frequent updates of its financial condition. Form 6-K filings (*See* Def. Ex. U, Dkt. 168-22, at 2), like the May 19, 2022 filing by Safe-T Group, are only required for material information that the company:

(1) makes or is required to make public pursuant to the law of the jurisdiction of its domicile or in which it is incorporated or organized (in this case, Israel),

(2) files or is required to file with a stock exchange on which its securities are traded (in this case Nasdaq and Tel Aviv) and which was made public by that exchange (not applicable to our knowledge), or

(3) distributes or is required to distribute to its securityholders (in this case, not applicable).

7

Neither the securities laws of the United States, nor other applicable laws, required NetNut, NetNut's parent Safe-T Group or NetNut's counsel of record to disclose the particular details of the Confidential Settlement Agreement. As a publicly-traded company, NetNut's parent Safe-T Group Ltd. is required to disclose "material legal proceedings."[6] Def. Ex. U at 2. As Mr. Evans is expected to testify, the disclosure of material legal proceedings requires the identification of legal proceedings that can have a material effect on a business. However, a publicly-traded company does not have an obligation to disclose all material information. "[I]t bears emphasis that § 10(b) and Rule 10b-5(b) do not create an affirmative duty to disclose any and all material information. Disclosure is required under these provisions only when necessary 'to make . . . statements made, in the light of the circumstances under which they were made, not misleading.['] Even with respect to information that a reasonable investor might consider material, companies can control what they have to disclose under these provisions by controlling what they say to the market." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44-45 (2011) (internal citations omitted); *see also In re Parametric Tech. Corp. Sec. Litig.*, 300 F. Supp. 2d 206, 212 (D. Mass. March 29, 2001) ("[A] company's obligation to disclose material nonpublic information arises from a duty imposed by law, and in the absence of such a duty, a publicly traded company does not have a general obligation to disclose internal information, even if investors might think it material to understanding the company's financial position. Neither Section 10(b) of the Exchange Act nor Rule 10b-5 itself imposes an affirmative duty of disclosure.")

> A. *According to Bright Data's Expert Robert Evans, Safe-T Group Was Not Obligated to Disclose Confidential Settlement Agreement Terms Under U.S. Securities Laws*

---

[6] Safe-T Group met this requirement for example in its form 20-F filing for fiscal year ended December 31, 2021 in which it stated that "[o]n June 18, 2021, Bright Data filed an action alleging infringement by NetNut of U.S. Patent Nos. 10, 257,319 and 10,484,510. The action was also filed in the United States District Court for the Eastern District of Texas, Marshall Division." Dkt. 168-9 at 17.

Bright Data has already submitted an expert declaration from Robert Evans (Ex. O, Dkt. 178-2), and anticipates Mr. Evans providing additional testimony at the June 28, 2022 evidentiary hearing. Mr. Evans is a former Chief of the Office of International Corporate Finance, Securities and Exchange Commission Division of Corporation Finance. As Mr. Evans describes in his Declaration, Safe-T Group met its disclosure requirements through its March 29th Form 20-F Annual Report filing and met its obligation to update through its May 31st Form 6-K filing. Ex. Q at 1-2, Ex. O at 1.

Safe-T Group previously disclosed this litigation between Bright Data and NetNut including the statement "the ongoing litigation may potentially result in costs or liability that we will absorb, as well as restrictions and/or cessation of NetNut's operations and services in the United States." See Safe-T Group Form 20-F for the fiscal year ended December 31, 2021 and Dkt. 168-9 at 17. Following the Settlement Agreement, Safe-T Group sufficiently updated this disclosure in its May 31st Form 6-K filing., which disclosed its CEO Shachar Daniel as stating "we are pleased to announce the settlement and dismissal of our outstanding patent litigation, which is expected to contribute, together with our cost reduction plan, to a significant reduction in the Company's overall general and administration costs in the third quarter of 2022 and onward." Ex. Q at 1. Having already disclosed the Bright Data v. NetNut litigation in the 20-F filing, Safe-T Group's May 31, 2022 disclosure satisfied its disclosure requirements without having to disclose any confidential terms of the Settlement Agreement.[7] Ex. O at 1-2.

---

[7] NetNut's reliance on *Basic Inc. v. Levinson*, 485 U.S. 224, 231-232 (1988) is misplaced. As emphasized in *Matrixx*, "§ 10(b) and Rule 10b-5(b) **do not** create an affirmative duty to disclose any and all material information. Disclosure is required under these provisions only when necessary 'to make… statements made, in the light of the circumstances under which they were made, not misleading[']…. [C]ompanies can control what they have to disclose under these provisions by controlling what they say to the market." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44-45 (2011)(internal citations omitted). If anything, the press release itself was

As Mr. Evans is anticipated to testify, Safe-T Group had no obligation to disclose confidential terms ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ None of these terms had a material effect on NetNut's business and Safe-T Group had no obligation to disclose them. In addition, Safe-T Group's previous SEC filings regarding this case between Bright Data and NetNut created no such obligation for Safe-T Group to disclose such confidential information. In Mr. Evan's opinion, Safe-T Group was not required to selectively disclose favorable confidential terms from the Settlement Agreement as part of an update. In addition, we expect Mr. Evans to testify that, if Safe-T Group had approached him for his advice about the potential need to disclose the Settlement Agreement and related update to its previous disclosures about this litigation, he would have under the circumstances at the time advised that Safe-T Group could wait until it filed its May 31st Form 6-K and limit the disclosures to exclude the extra disclosures in the Safe-T Group May 19th Form 6-K and press release. We expect that Mr. Evans will also testify that the existence of several Safe-T Group Securities Act of 1933 registration statements would not have changed his answer.

> B. *Safe-T Group's May 19th Disclosure about the Settlement Agreement Was Not Required to Avoid Violation of U.S. Securities Laws, and if it Was Going to Disclose, It Was Not Permitted to Issue a One-Sided Disclosure*

---

misleading and will require correction to update investors as to the "total mix of information," since it left out key information about ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ confirming that Bright Data's patented methods continue to offers a significant and marketable advantage over NetNut. Similarly, *In re Hi-Crush Partners L.P. Sec. Litig* is inapposite as that case involved a securities registrant filing a redacted copy of a confidential agreement in response to a letter from the SEC specifically directing the registrant to file the same. 2013 U.S. Dist LEXIS 171110, *27 (S.D.N.Y. Dec. 2, 2013).

Further, as Mr. Evans is anticipated to testify, once Safe-T Group elected to disclose details about the Settlement Agreement in its May 19th Form 6-K, it was required to avoid selective disclosure of terms favorable to NetNut that would create an unbalanced picture for investors. That issue could have been avoided if, ▮▮▮ But NetNut ▮▮▮ issued a misleading statement ▮▮▮. Issuing a one-sided press release created a misleading mix of information in violation of *Matrixx Initiatives, Inc* For example, Safe-T Group disclosed that ▮▮▮ but did not disclose that ▮▮▮ Also, ▮▮▮ Ex. A at ¶¶ 1 and 5. In addition, ▮▮▮ Ex. A at ¶ 3. Consequently, ▮▮▮

In addition, Safe-T Group also omitted important confidential terms that were not favorable to NetNut ▮▮▮ Ex. A at ¶¶ 3 and 10. Safe-T Group's selective disclosure of confidential information risked creating a misleading impression regarding the nature

11

and scope of the Settlement Agreement, which itself is not permitted under the U.S. securities laws. *Matrixx Initiatives*, 563 U.S. 27, 44-45.

### C. Safe-T Group's Disclosures Regarding a Separate Settlement for a Separate Litigation Are Irrelevant to Safe-T's Disclosure Requirements Regarding the Settlement Agreement in this Case

Similarly, Safe-T Group's disclosures regarding the previous litigation between Bright Data and NetNut ("Preceding Action") also created no such obligation for Safe-T Group to disclose similar information in this case. The Preceding Action resulted in ███████████ ███████████ ███████████ ███████████ Dkt. 168-3. NetNut cannot argue that its disclosure of confidential terms from a different settlement agreement resolving a different case creates an obligation that it discloses confidential terms from this Settlement Agreement. As Mr. Evans is anticipated to testify, NetNut's disclosure of terms from one settlement agreement created no obligation for disclosure with regard to a separate settlement agreement under U.S. securities laws.

### D. NetNut's Supporting Evidence of Third-Party Disclosures Regarding Settlements Is Irrelevant to Safe-T's Disclosure Requirements Regarding the Settlement Agreement in this Case

In support of its supplemental briefing, NetNut has identified a number of third-party filings with the SEC involving the apparent partial disclosure of settlement terms. However, there is no basis to determine whether (a) ███████████ ███████████, (b) are agreed to by the parties, or (c) in some cases whether the settlement agreement was confidential to the parties. Consequently, these filings are irrelevant to Safe-T's disclosure requirements regarding the Settlement Agreement in this case under U.S. securities laws.

Regardless, even with SEC filings, it is indisputable that a party may request confidential treatment. For example, in the form 8-K filing submitted by Applied Materials on September 20, 2004, Applied Materials requested confidential treatment for redacted portions of the agreement submitted to the SEC. Ex. W at 3. In this case, Safe-T Group made no effort to seek confidential treatment.

### E. *Safe-T Group's Listing on the Nasdaq and Tel-Aviv Stock Exchanges Does Not Impose a Different Materiality Requirement*

NetNut also argues that Safe-T Group is also obligated to disclose information as a publicly-traded company listed on Nasdaq. However, "with respect to Safe-T Group's listing on Nasdaq, Nasdaq's threshold for requiring public disclosure is based on 'materiality,' which has the same meaning under the SEC's rules." Ex. O at 2. In addition, pursuant to IM-5250-1 of the Nasdaq rules, "[u]nder unusual circumstances Companies may not be required to make public disclosure of material events; for example, where it is possible to maintain confidentiality of those events…." Ex. X at 11.

In addition, NetNut has also asserted that Safe-T Group is "dual-listed on the NASDAQ Stock Market and Tel-Aviv Stock Exchange (TASE)." Dkt. 168-16 at ¶ 4. However, the Israel Securities Authority provides guidance on its website stating that dual-listed companies, including companies listed on NASDAQ and TASE, are exempt "from reporting requirements pursuant to the Israeli Securities Law and allows them to continue reporting according to the foreign law that applies to them (i.e. foreign security laws and regulations)." Ex. Y; see also Guide for Dual-Listed Companies, Ex. Z.

### F. *U.S. Securities Laws Impose No Requirement to Issue a Press Release*

Under U.S. securities laws, Safe-T had no obligation to issue a press release of any kind. Ex. O at 2. If a party issues a press release, that press release is not required to be filed with the

13

SEC. "[P]ress releases are not required to be filed with the SEC. See 17 CFR § 229.10." *In re Cylink Sec. Litig.*, 178 F. Supp. 2d 1077, 1086 (N.D. Cal. 2001). Further, "Under the securities laws, 'a defendant is not required to disclose all known information, but only information that is necessary to make other statements not misleading.' *Kapps v. Torch Offshore, Inc.*, 379 F.3d 207, 212 n.6 (5th Cir. 2004)." *Firefighters Pension & Relief Fund v. Bulmahn*, 147 F. Supp. 3d 493, 535-36 (E.D. La. 2015). Clearly, Safe-T filed its press release concurrently with the SEC in an improper attempt to circumvent the confidentiality of the Settlement. Such disclosure was a violation of the Protective Order as well as the Settlement Agreement, which required ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. A at 3.

4. **The Court Has the Authority to Grant Relief Including Ordering Sanctions Against NetNut and Its Counsel, Dissemination of the Same Order to the SEC and Medai Outlets, NetNut's Payment of Bright Data's Fees and Costs Associated With This Motion, and Any Other Appropriate Relief**

As addressed above, the Court has the authority to enforce its Protective Order and sanction NetNut under both its Protective Order and the Court's inherent powers. This Court provided similar relief to Bright Data, formerly known as Luminati Networks Ltd., in the case of *Luminati Networks Ltd. v. UAB Tesonet and UAB Metacluster LT*, Case No. 2:18-cv-299-JRG (E.D. Tex. April 7, 2020). Ex. I at 2. The Court may also issue monetary sanctions other than costs and fees to deter future conduct by other litigants, including under Rule 16(f)(1)(B). See e.g. *Pers. Audio, LLC v. Apple, Inc.*, 2011 U.S. Dist. LEXIS 146756, *5 (E.D. Tex. 2011).

In this case, the disclosure is even more egregious than the *Tesonet* case as NetNut and its counsel disclosed highly confidential terms from the Settlement Agreement giving the misleading and deceptive appearance that Bright Data's patents have little value. Immediately upon discovery of NetNut's breach of the Protective Order, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

14

██████████████████████████████████████
██████████████████████████████████████
████████████████████████████████ Ex. R

at 1-2. Despite this immediate notice, NetNut and Finnegan failed to effect any remedial changes and the disclosed confidential settlement terms remain publicly available.

NetNut and the Finnegan law firm have created a situation in which there is no corrective action they can take to make Bright Data whole ensuring great reputational damage to Bright Data. NetNut and Finnegan's complete disregard for the protections afforded by the Court undermines the ability of parties to enter settlements and the Court's interest in parties resolving disputes without Court intervention.

Given the above, Bright Data requests that the Court use its authority to sanction NetNut and its counsel of record under the Protective Order and its own inherent powers. Specifically, Bright Data requests that the Court order (a) that NetNut its counsel of record are sanctioned for violation of the protective order and providing one-sided and misleading information to the market, including ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████; (b) that NetNut provide the Court's sanctions order to the SEC and the same outlets that were sent the press releases; (c) payment of Bright Data's costs and fees associated with the filing of this motion; and (d) any other relief the Court finds appropriate, including, given that NetNut's egregious, immediate public disclosure would dissuade any parties from settling cases in this Court in the future if there are not serious consequences, an additional monetary sanction in an amount deemed by the Court sufficient to deter such conduct in the future.

15

Dated: July 14, 2022

Respectfully submitted,

By: */s/ Ronald Wielkopolski*

Elizabeth L. DeRieux
State Bar No. 05770585
Capshaw DeRieux, LLP
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: 903-845-5770
ederieux@capshawlaw.com

J. Mark Mann
G. Blake Thompson
Mann | Tindel | Thompson
300 West Main
Henderson, TX 75652
mark@themannfirm.com
blake@themannfirm.com
Office 903-657-8540
Marshall Office 903-472-4294
Tyler Office 903-596-0900
Waco Office 254-776-3336

Korula T. Cherian
Robert Harkins
Cherian LLP
1936 University Ave, Ste. 350
Berkeley, CA 94704
sunnyc@cherianllp.com
bobh@cherianllp.com

Thomas M. Dunham
Ronald Wielkopolski
J. Michael Woods
Cherian LLP
1901 L St. NW, Suite 700
Washington, DC 20036
tomd@cherianllp.com
ronw@cherianllp.com
michaelw@cherianllp.com

***Attorneys for Plaintiff***
***Bright Data Ltd.***

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served this 14th day of July 2022, with a copy of this document via CM/ECF.

/s/ *Ronald Wielkopolski*

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that the foregoing document is being filed under seal pursuant to the Protective Order entered in this matter.

/s/ *Ronald Wielkopolski*