**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **BRIGHT DATA LTD.** | § | |
| | § | |
| **Plaintiff,** | § | **CIVIL ACTION NO. 2:21-cv-00225-** |
| | § | **JRG-RSP** |
| **v.** | § | |
| | § | |
| **NETNUT LTD.** | § | **JURY TRIAL DEMANDED** |
| | § | |
| **Defendant.** | § | |
| | § | |
| | § | |

---

**<u>DEFENDANT NETNUT LTD.'S SUPPLEMENTAL BRIEF PURSUANT TO DKT. 182</u>**

**TABLE OF CONTENTS**

I. ENFORCEABILITY OF THE PROTECTIVE ORDER POST-DISMISSAL ..................... 3

II. THE PROTECTIVE ORDER DOES NOT APPLY TO THE SETTLEMENT AGREEMENT ............................................................................................................... 3

    A. Parties to the Settlement Agreement ███████████ Were Not Party to the Litigation or the Protective Order, Which Reveals the Parties' True Intent.............. 3

    B. No Party ██████████████████ Under the Protective Order ................ 4

    C. Nothing in the Protective Order Applies to Settlement Agreements......................... 5

    D. Bright Data's Unsupported Position Leads to Contradictions, Which it Ignores ....... 5

III. SAFE-T'S DISCLOSURES WERE REQUIRED BY SECURITIES LAW......................... 7

    A. The ██████████████████ Safe-T's Securities Disclosures ........ 7

    B. Safe-T Faced Significant Liabilities Without Its Requisite Disclosures ................. 11

    C. Safe-T's Press Release, Incorporated in its 6-K Filing, Conformed to a Standard Frequently Used by Public Companies, and Consistent With its Own Practice....... 13

IV. NO VIOLATION HAS OCCURRED, AND IF THE COURT FINDS DIFFERENTLY THE APPROPRIATE REMEDY WOULD BE AT MOST AN ADMONITION............... 14

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988).............................................................................................8

*In re Bristol Myers Squibb Co. Sec. Litig.*,
   586 F. Supp. 2d 148 (S.D.N.Y. 2008)...............................................................10

*Cambridge Consulting Group, Inc. v. Bank of Am., N.A.*,
   No. 3:11-cv-306-O, 2012 WL 13018982 (N.D. Tex. Feb. 7, 2012),
   *aff'd* 511 Fed. Appx. 379 (5th Cir. 2013) ..........................................................3

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
   490 F. Supp. 2d 784 (S.D. Tex. 2007) ............................................................9, 10

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
   No. 12-2389, 2013 WL 11319408 (S.D.N.Y. Dec. 12, 2013) ............................10

*In re Gen. Elec. Sec. Litig.*,
   844 F. App'x 385 (2d Cir. 2021) ....................................................................9, 10

*Giant Eagle Inc. v. Excentus Corp.*,
   No. 3:14-CV-1195-B, 2014 WL 12531173 (N.D. Tex. Aug. 2, 2014)...................4

*Gilbert Tex. Const., L.P. v. Underwriters at Lloyd's London*,
   327 S.W.3d 118 (Tex. 2010)...............................................................................4

*Herman & MacLean v. Huddelston*,
   459 U.S. 375 (1983)..........................................................................................12

*Hoffman v. L & M Arts*,
   838 F.3d 568 (5th Cir. 2016) ......................................................................3, 6, 7

*Innovation Sciences, LLC v. HTC Corp.*,
   No. 4:18-CV-00476, 2020 WL 4536053 (E.D. Tex. Aug. 6, 2020) .....................15

*Lookout Windpower Hldg. Co., LLC v. Edison Mission Energy*,
   No. 3:09-104, 2011 WL 13238016 (W.D. Pa. Feb. 22, 2011)..............................15

*Lormand v. US Unwired, Inc.*,
   565 F.3d 228 (5th Cir. 2009) ...............................................................................8

*Meyer v. Jinkosolar Hldgs. Co.*,
    761 F.3d 245 (2d Cir. 2014)...............................................................................9, 10

*On Command Video Corp. v. LodgeNet Entm't Corp.*,
    976 F. Supp. 917 (N.D. Cal. 1997) ...........................................................................15

*Paice LLC v. Hyundai Motor Co.*,
    No. WDQ-12-499, 2015 WL 13594450 (D. Md. May 5, 2015)..................................15

*In re Quintel Ent. Inc. Sec. Litig.*,
    72 F. Supp. 2d 283 (S.D.N.Y. 1999).........................................................................10

*Salman v. U.S.*,
    137 S. Ct. 420 (2016)...........................................................................................12, 13

*Sec. & Exch. Comm'n v. Carter*,
    No. 4:19-CV-100-SDJ, 2020 WL 6304889 (E.D. Tex. Oct. 28, 2020) ........................8

*Sec. & Exch. Comm'n v. Evolution Cap. Advisors, LLC*,
    866 F. Supp. 2d 661 (S.D. Tex. 2011) .........................................................................8

*Sec. & Exch. Comm'n v. Yuen*,
    No. 03-CV-4376, 2006 WL 1390828 (C.D. Cal. Mar. 16, 2006)................................11

*Shenk v. Mallinckrodt*,
    No. 17-CV-00145, 2019 WL 3491485 (D.D.C. July 30, 2019) ...........................10, 11

*Stratte-McClure v. Morgan Stanley*,
    776 F.3d 94 (2d Cir. 2015).........................................................................................7

*In re Vivendi, S.A. Sec. Litig.*,
    838 F.3d 223 (2d Cir. 2016).......................................................................................7

*Weiner v. Quaker Oats Co.*,
    129 F.3d 310 (3d Cir. 1997)...................................................................................9, 10

*Wi-Lan, Inc. v. Acer, Inc.*,
    No. 2:07-cv-473, 2009 WL 1766143 (E.D. Tex. June 23, 2009) ................................5

## Federal Rules

Fed. R. Civ. P. 26(a)(1)(A)(i)-(iv) ...................................................................................14

Fed. R. Civ. P. 26(c)(1).....................................................................................................5

Fed. R. Civ. P. 37(b)(2)..............................................................................................14

Fed. R. Civ. P. 37(b)(2)(A).......................................................................................14

**Other**

Report of Foreign Private Issuer Pursuant to Rule 13a-16 OR 15d-16 Under the Securities
Exchange Act of 1934 (Form 6-K) (Ex. U) ............................................................9, 10

Current Report Pursuant to Section 13 OR 15(d) of The Securities Exchange Act of 1934
(Form 8-K) (Ex. W) ...................................................................................................12

The NASDAQ Stock Market LLC Rules (Ex. V) ......................................................10, 12

**TABLE OF EXHIBITS**

| | |
|---|---|
| Exhibit A | Safe-T Form 6-K (June 17, 2020) |
| Exhibit B | Bright Data & NetNut Settlement Agreement (November 8, 2021) |
| Exhibit C | Safe-T, Press Release, Ex. 99.1 (December 14, 2021) |
| Exhibit D | Safe-T, Press Release (December 14, 2021) |
| Exhibit E | Confidential Settlement Agreement (May 15, 2022) |
| Exhibit F | Safe-T, Press Release, Ex. 99.1 (May 19, 2022) |
| Exhibit G | Safe-T, Press Release (May 19, 2022) |
| Exhibit H | Safe-T Form 20-F (year ended December 31, 2021) |
| Exhibit I | Safe-T, Press Release, Ex. 99.1 (March 29, 2022) |
| Exhibit J | Safe-T, Press Release (March 29, 2022) |
| Exhibit K | Yahoo! Finance Article (December 14, 2021) |
| Exhibit L | MarketWatch Article (March 29, 2022) |
| Exhibit M | Seeking Alpha Article (March 29, 2022) |
| Exhibit N | Declaration Of Shachar Daniel (July 13, 2022) |
| Exhibit O | Declaration Of Hagit Gal (July 13, 2022) |
| Exhibit P | Joint Motion To Terminate Due To Settlement (May 24, 2022) |
| Exhibit Q | Joint Motion To Terminate Due To Settlement (May 24, 2022) |
| Exhibit R | Joint Motion To Terminate Due To Settlement (May 24, 2022) |
| Exhibit S | Joint Motion To Terminate Due To Settlement (May 24, 2022) |
| Exhibit T | Email from Counsel for NetNut to Counsel for Bright Data (May 24, 2022) |
| Exhibit U | SEC Form 6-K |
| Exhibit V | Nasdaq Listing Rules |
| Exhibit W | SEC Form 8-K |
| Exhibit X | Declaration of Lawrence Iason (July 13, 2022) |
| Exhibit Y | Declaration of Gregory T. Lawrence (July 14, 2022) |
| Exhibit Z | Collection of Safe-T Form 6-K Filings |
| Exhibit AA | Collection of Network-1 Form 8-K Filings |
| Exhibit BB | Collection of Finjan Form 8-K Filings |
| Exhibit CC | Collection of Additional Third-Party Form 6-K and Form 8-K Filings |
| Exhibit DD | Email from Counsel for NetNut to Counsel for Bright Data (April 30, 2022) |
| Exhibit EE | Email from Counsel for NetNut to Counsel for Bright Data (May 10, 2022) |
| Exhibit FF | NetNut's Disclosures (July 8, 2022) |
| Exhibit GG | Bright Data's Disclosures (July 8, 2022) |

███████████████████████████████████████

The parties' settlement agreement is not subject to the protective order in the litigation.  All of the ***objective*** and ***contemporaneous*** evidence demonstrates that the settlement agreement ████████████████████████████████████████████████.  For example, NetNut's parent company, Safe-T Group ("Safe-T"), is ███████████████████████ not a party to the litigation or protective order, making it not only implausible but unworkable for the protective order to apply to the settlement agreement.  Further proving the parties' actual intent when entering the settlement agreement, ███████████████████████████████ ██████████████████████████████████████████████.  Bright Data's strained position to the contrary hinges ████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████ (Ex. E ¶ 12).

The record also clearly shows, again through ***objective*** and ***contemporaneous*** evidence, that Safe-T's challenged disclosures were required by securities law.  When Safe-T made its challenged disclosures, it followed the customary and established industry practice: issuing a press release with material information and incorporating that press release into a Form 6-K filing with the Securities and Exchange Commission ("SEC").  Safe-T has followed this approach since its original listing on Nasdaq, including at least ***40 times*** since just 2020, Ex. Z, showing that when it did so here it was acting consistently and in compliance with the law.  Safe-T's challenged disclosures here contained ***material information*** pertaining to the parties' settlement as required by law—████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████—consistent with its obligations as a publicly traded company.[1]  The evidence—

---

[1] While Safe-T's May 19 Form 6-K contained both favorable and unfavorable disclosures, the federal

██████████████████████

without litigation bias or hindsight—demonstrates that Safe-T's approach is not unique but instead follows industry norms for making securities disclosures: publicly traded litigants in this District (Ex. AA) and others (Ex. BB, CC) follow the same approach of issuing press releases disclosing specific financial and legal terms of settlements that are incorporated into SEC filings.

The propriety of Safe-T's disclosures is confirmed by the expert testimony of Lawrence Iason, a former head of the SEC's New York Regional Office where he supervised all enforcement and regulatory operations in the SEC's largest region.  Ex. X.  The lack of merit in Bright Data's attacks is further proven by the expert testimony of Gregory Lawrence, a former Senior Counsel in the Division of Enforcement at the SEC, who explains that if Safe-T did not make its required securities disclosures it would have been exposed to substantial civil liability.  Ex. Y.

These sound and well-founded expert opinions sharply contrast with the statements of Bright Data's declarant, Robert Evans.  Dkt. 178, Ex. O.  Mr. Evans was willing to assert the contrary in a conclusory, three-page declaration that did not even analyze Safe-T's financial condition, the risk that NetNut's litigations posed for Safe-T, Safe-T's well-documented history of using press releases attached to Form 6-K filings in disclosing material information, the widespread industry practice of public companies doing exactly the same, or the fact that Safe-T's disclosures following the *Bright Data II* settlement mirrored those following the *Bright Data I* settlement.  *Id*.  It is even more troubling that Mr. Evans would incorrectly assert that Safe-T's "May 19, 2022 Form 6-K appears to only present information about the settlement that is favorable to Safe-T Group."  *Id*. ¶ 3.  He did not even review the settlement agreement before making that statement.  *See id*. at 1-2 (statements "based solely on my review of" three securities filings).

_____

securities laws do not require a "balanced" disclosure.  The law only requires disclosure of information that is material to a reasonable investor.  *See* Ex. Y ¶ 31.

████████████████████████████████

## I.      ENFORCEABILITY OF THE PROTECTIVE ORDER POST-DISMISSAL

In order to focus on the clearly dispositive issues, NetNut does not dispute for purposes of this brief that the protective order may be enforceable by the Court, post-dismissal, with respect to discovery materials that it covered while the case was active. *See, e.g.*, Dkt. 58 ¶ 23 (destruction of documents within 30 days of dismissal); *id.* ¶¶ 1, 8, 18, 21, 22 (applying to "discovery").

## II.     THE PROTECTIVE ORDER DOES NOT APPLY TO THE SETTLEMENT AGREEMENT

### A.    Parties to the Settlement Agreement ████████████ Were Not Party to the Litigation or the Protective Order, Which Reveals the Parties' True Intent

The parties to the settlement agreement include ██████████████████████████

██████████████████████████████ Ex. E ¶ 1 n.1 & n.2. ████████████████

███████████████ *Id.* at n.2. ███████████████████████████

███████████████████████ This is perhaps the most powerful indication of the parties' actual intent when they entered the agreement. *See Hoffman v. L & M Arts*, 838 F.3d 568, 581 (5th Cir. 2016) ("[T]he primary concern of a court construing a written contract is to ascertain the true intent of the parties as expressed in the instrument.") (quotations and brackets omitted). █████████████████████████████████

████████████████████████████████████████

██████████████████████████ *See Cambridge Consulting Group, Inc. v. Bank of Am., N.A.*, No. 3:11-cv-306-O, 2012 WL 13018982, at *3 (N.D. Tex. Feb. 7, 2012), *aff'd* 511 Fed. Appx. 379 (5th Cir. 2013) ("the Court should not construe a contract provision in a manner that is unreasonable or absurd."). The fact is that when the parties to the settlement agreement negotiated its contents, they never invoked the protective order, ██████████████ ████████████████████████████, and never sought to resolve the many contradictions that would arise if the protective order did apply. These objective indications of the

███████████████████████████████████

parties' intent, as further discussed below, confirm the truth of their expectations regarding

confidentiality: ████████████████████████████████████

████████████████████████████.

      **B.**    **No Party** ███████████████████████ **Under the Protective Order**

If the parties had intended to subject the settlement agreement to the protective order, they

were required to "affix[] a legend or stamp" with the word "CONFIDENTIAL" "on each page of

the" agreement "for which such protection is sought."  Dkt. 58 ¶ 2.  ████████████  This is

another strong indication of ████████████████████████████████████

█████████████████████████████.  *See Giant Eagle Inc. v. Excentus*

*Corp.*, No. 3:14-CV-1195-B, 2014 WL 12531173, at *4 (N.D. Tex. Aug. 2, 2014) ("The parties'

intent is governed by what they said in the contract, not by what one side or the other alleges they

intended to say but did not.") (quoting *Gilbert Tex. Const., L.P. v. Underwriters at Lloyd's London*,

327 S.W.3d 118, 127 (Tex. 2010)) (quotations and brackets omitted).

Bright Data's after-the-fact disagreement, based solely on ████████████████

███████████████████████████, Dkt. 156 at 7, is specious.  ██████████████

███████████████████████████████████████████████. 58

¶ 2. It is █████████████████.  ████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████.  Ex. EE at

4 (NetNut's edits).  █████████████████████████████.  ████

████████████████████████████████████████████████

██████████.  Ex. N ¶¶ 23-24; Ex. O ¶¶ 26-27.  It is disingenuous for Bright Data to now claim

that the parties intended ████████████████████████████████

████████████████████████████████████████████████.



In contrast ████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████ Ex. DD at 1, 3. ██████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

Accordingly, while the parties never intended ███████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████ .

### C.      Nothing in the Protective Order Applies to Settlement Agreements

The protective order was never intended to apply to settlement materials, such as the settlement agreement.  It was meant to govern disclosure of "Protected Material obtained by any party pursuant to discovery in this litigation[.]"  Dkt. 58 ¶ 1.  "The Order applies to pretrial discovery."  *Id.* ¶ 18.  It also applied to materials that might contain discovery evidence, such as hearing or deposition testimony, pleadings and other filings, affidavits, and stipulations. *Id.* ¶ 4.  Nowhere in the protective order, however, is there a reference to settlement agreements.

This is of course consistent with the Federal Rules, which allow protective orders to govern "discovery."  Fed. R. Civ. P. 26(c)(1); *see also Wi-Lan, Inc. v. Acer, Inc.*, No. 2:07-cv-473, 2009 WL 1766143, at *2 (E.D. Tex. June 23, 2009) (protective orders allow protections "in discovery").  Here there is no dispute that the parties' settlement agreement is not discovery material.  It is a contract negotiated between the litigants and their non-party corporate affiliates.  Accordingly, not only does the settlement agreement not invoke the protective order as discussed above, but the protective order does not govern case resolution contracts like the settlement agreement.

### D.      Bright Data's Unsupported Position Leads to Contradictions, Which it Ignores

Bright Data's theory is also demonstrably incorrect because it leads to serious



contradictions, all of which Bright Data fails to address.

For example, as parties to the settlement agreement, NetNut, Safe-T, and Bright Data are entitled to keep a copy of the agreement in their records.   But if the agreement was "DESIGNATED MATERIAL" under the protective order, the parties would have to destroy all copies of it within 30 days of the termination of the litigation (akin to a deposition transcript containing both sides' DESIGNATED MATERIAL).  Dkt. 58 ¶ 23.

Similarly, under the settlement agreement, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  *See* Ex. E ▮▮ (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).  But if the protective order applied, access would be permitted only to "three (3) designated representatives of each of the Parties."  Dkt. 58 ¶ 6(d). Contrary to Bright Data's theory, no party ever identified such "designated representatives" as the protective order would require.  *Id*.  Bright Data's theory also conflicts with Paragraph 14 of the protective order.  This Paragraph states that "[t]here shall be no disclosure of any DESIGNATED MATERIAL by any person authorized to have access thereto to any person who is not authorized for such access under this Order," ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Ex. E ¶ ▮.

Further, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, the protective order would allow for such disclosures.  *See* Dkt. 58 ¶ 6(h) & ¶ 6(i) (allowing use in "Related Proceedings(s)" before the USPTO and PTAB).

The many conflicts between the settlement agreement's confidentiality terms and the protective order further confirm the parties' true intent in the settlement agreement.  *See Hoffman*,

███████████████████████████████████████

838 F.3d at 581 (focusing on "the true intent of the parties as expressed in the instrument").  No party sought to address such conflicts in the settlement agreement because no party had a genuine expectation that the protective order applied to the settlement agreement.

## III.   SAFE-T'S DISCLOSURES WERE REQUIRED BY SECURITIES LAW

### A.   The ████████████████████████████ Safe-T's Securities Disclosures

The ████████████████████████████████████████████

████████████████████████████ Ex. E ¶ 12.  Bright Data asserts that NetNut has not identified any requirement obligating Safe-T to make the challenged disclosures. Dkt. 156 at 7-8.  In support, Bright Data asserts that "§ 10(b) and Rule 10b-5(b) do not create an affirmative duty to disclose any and all material information."  *Id.* at 8.  This is a strawman.  Safe-T's duty to disclose certain information arises not from §10(b) or Rule 10b-5 promulgated thereunder, but from SEC regulations and Nasdaq listing rules.  It is axiomatic that "a duty to disclose under §10(b) or Rule 10b-5 can derive from statutes or regulations that obligate a party to speak."  *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 239 n.8 (2d Cir. 2016) (citation omitted, brackets omitted); *see also Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 102 (2d Cir. 2015) ("This Court and our sister circuits have long recognized that a duty to disclose under Section 10(b) can derive from statutes or regulations that obligate a party to speak." (collecting cases)).

As a publicly traded company in the U.S. with foreign private issuer status, Safe-T's duty to speak arose from SEC Form 6-K, "Report of Foreign Private Issuers Pursuant to Rule 13a-16 or 15d-16 Under the Securities Exchange Act of 1934."  General Instruction B requires foreign issuers to promptly disclose (among other issues) "material legal proceedings" affecting them and their subsidiaries.  Ex. U.  Additionally, Nasdaq requires listed companies to make prompt "disclosure of any material information that would reasonably be expected to affect the value of its securities or influence investors' decisions."  Ex. V.  Information is material if there is a

████████████████████████████████████

substantial likelihood that its omission "would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988); *see also Lormand v. US Unwired, Inc.*, 565 F.3d 228, 248 (5th Cir. 2009); *Sec. & Exch. Comm'n v. Carter*, No. 4:19-CV-100-SDJ, 2020 WL 6304889, at *5 (E.D. Tex. Oct. 28, 2020) (citation omitted); *Sec. & Exch. Comm'n v. Evolution Cap. Advisors, LLC*, 866 F. Supp. 2d 661, 667 (S.D. Tex. 2011) (citation omitted).  As explained in the Declaration of Lawrence Iason, "[b]ecause any assessment of materiality must be made in light of the full context of existing and relevant facts already known to investors, the onus is on companies to make appropriate disclosures to ensure the information in the marketplace is true and complete once it has provided some information on a topic, even if the company did not have an affirmative duty to disclose that information in the first place."  Ex. X ¶ 23.

Here, ████████████████████████████████████████

████████████████████████████████████████████

████████████  Ex. O ¶ 24; Ex. N ¶ 17.  Similarly, ███████████████████

████████████████████████████.  Ex. O ¶ 24; Ex. N ¶ 17.  The detrimental impact of any payment obligations is underscored by the fact that Safe-T reported a net loss of $13,125,000 and $7,845,000 in its annual report for 2021 and 2020, respectively.  Ex. H at 46.  Any payment by NetNut resulting from this litigation would have significantly impacted Safe-T's operating expenses and ability to continue operating in the U.S.  ██████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████  As further explained below, Safe-T is not only required to report on material issues, but it has a duty to disclose information necessary to make the disclosure accurate in all material respects and not misleading.

████████████████████████████

Bright Data also contends that Safe-T met its disclosure obligations through its March 29, 2022 Form 20-F filing and met its duty to update through its May 31 Form 6-K filing.  Dkt. 178 at 2.  This argument reveals a stark misunderstanding of securities laws.  "[O]nce a company speaks on an issue or topic, there is a duty to tell the *whole* truth.  *Meyer v. Jinkosolar Hldgs. Co.*, 761 F.3d 245, 250 (2d Cir. 2014) (citation omitted, emphasis added); *see also In re Gen. Elec. Sec. Litig.*, 844 F. App'x 385, 387 (2d Cir. 2021) ("A statement can be misleading by virtue of its omissions viewed in context of the statement as a whole.  'Even when there is no existing independent duty to disclose information, once a company speaks on an issue or topic, there is a duty to tell the whole truth.'" (citations omitted)); *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 490 F. Supp. 2d 784, 794 (S.D. Tex. 2007) ("An affirmative duty to disclose may arise in four circumstances [including]. . .  when a person makes a partial disclosure and conveys a false impression." (citation omitted)).

Here, Safe-T's March 29, 2022 Form 20-F ("2021 Form 20-F") disclosed not only the fact of pending litigation, but also the risk that "the ongoing litigation may potentially result in costs or liability that we will absorb, as well as restrictions and/or cessation of NetNut's operations and services in the United States.  There can be no assurance that we will prevail in any legal proceedings instituted by Bright Data or others, or that such proceedings will not have a material adverse effect on our business, financial condition or results of operations."  Ex. H at 17.  With its 2021 Form 20-F disclosure, Safe-T expressed to investors the significant risks it faced, including costs it may have to absorb, cessation of operations in the United States, and a material adverse effect on its financial condition.  *Id.* at 17, 78.

Thus, upon the settlement of *Bright Data II,* ████████████████████████

█████████████████████████████████████████████████████

████████████████████████.  *See, e.g.*, *Weiner v. Quaker Oats Co.*, 129 F.3d 310, 318 (3d

9



Cir. 1997) (defendants "had a duty to update such statements when they became unreliable."); *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, No. 12-2389, 2013 WL 11319408, at *23 (S.D.N.Y. Dec. 12, 2013) (defendants had a duty to update their disclosures because defendants "knew or should have known that their statements became misleading" (citation omitted, brackets removed)); *In re Quintel Ent. Inc. Sec. Litig.*, 72 F. Supp. 2d 283, 291-92 (S.D.N.Y. 1999) ("A duty to update prior statements 'may exist when a statement, reasonable at the time it is made, becomes misleading because of a subsequent event.'" (citation omitted)).

Without a disclosure ███████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████. Safe-T's May 19, 2022 Form 6-K disclosure informed investors ██████████

████████. In other words, Safe-T disclosed the whole truth as required under the federal securities laws. *See In re Gen. Elec. Sec. Litig.*, 844 F. App'x at 387; *Meyer*, 761 F.3d at 250; *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 490 F. Supp. 2d at 794.

Courts routinely hold that settlement of a litigation, and the terms of that settlement, constitute material information requiring disclosure under the securities law. *See, e.g.*, *In re Bristol Myers Squibb Co. Sec. Litig.*, 586 F. Supp. 2d 148, 161 (S.D.N.Y. 2008) ("Plaintiffs have plausibly pleaded that Bristol–Myers's statements were rendered misleading by the failure to include relevant information about the nature of the settlement negotiations and the terms of the settlement agreement."); *Shenk v. Mallinckrodt*, No. 17-CV-00145, 2019 WL 3491485, at *13 (D.D.C. July 30, 2019) (denying motion to dismiss, in part, and finding that plaintiffs plausibly alleged that



defendant failed to disclose that the terms of settlement "would likely have a material adverse impact on Mallinckrodt's financial condition, results of operations, and cash flows."); *Sec. & Exch. Comm'n v. Yuen*, No. 03-CV-4376, 2006 WL 1390828, at *30 (C.D. Cal. Mar. 16, 2006) (failure to disclose a particular settlement term "omitted material facts about the agreement, including its impact on" other financials reported by company).

Bright Data also ███████████████████████████████████████████████████████ ██████████████████████████████████████████████. Dkt. 156 at 7. ███████████████████████████████████████████████████████ ████████████████████████████████████████ Ex. E ¶ 12. This did not require that Safe-T compromise on disclosures mandated by law. ████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ██████████████████████████████████████. The reasonableness of Safe-T's disclosure is further confirmed by the fact that it was substantively the same as its disclosure upon the settlement of *Bright Data I*, to which Bright Data never objected. Ex. C at 1; Ex. D at 1.

Additionally, Bright Data complains that Safe-T's disclosure "within days of the closing of the litigation" was intended to maximize the impact on Bright Data. Dkt. 156 at 12. However, Form 6-K and Nasdaq rules require disclosures be made "promptly." Exs. U & V. While neither set of rules define promptly, Form 8-K (the 6-K equivalent for domestic companies) provides that registrants must file or furnish a report "within four business days after occurrence of the event" being reported. Ex. W at 2. Safe-T's disclosures were thus prompt as required by law.

**B.    Safe-T Faced Significant Liabilities Without Its Requisite Disclosures**

If Safe-T failed to make its challenged disclosures of material information, it would have faced significant exposure under federal securities laws—both regulatory scrutiny from the SEC

and private actions from investors.  As explained in greater detail in the Declaration of Gregory T. Lawrence, a former Senior Counsel in the Division of Enforcement of the SEC, the SEC has broad authority under Section 21 of the Exchange Act of 1934 ("Exchange Act") to investigate and prosecute violations of the federal securities laws by an issuer, such as Safe-T.  Ex. Y ¶ 18. Therefore, if the SEC suspected that Safe-T made factually inaccurate filings in its annual and periodic reports, in violation of Section 13(a) of the Exchange Act and Rules 13a-1 and 13a-16 promulgated thereunder, Safe-T could face investigation and prosecution.  *Id.* ¶ 19.

Safe-T also faced potential legal exposure under Section 11(a) of the Securities Act of 1933 ("Securities Act") by private investors.  *Id*. ¶¶ 20-22.  The Securities Act imposes strict liability for misstatements or omissions in a company's registration statement.  *See Herman & MacLean v. Huddelston*, 459 U.S. 375, 382 (1983) (under Section 11, "[l]iability against the issuer of a security is virtually absolute, even for innocent misstatements."); Ex. Y ¶ 20.  Further, any individual who purchased securities pursuant to a faulty registration statement has standing to sue.  *Id.*  Here, Safe-T incorporated by reference portions of its May 19, 2022 and May 31, 2022 Form 6-Ks into its registration statement on Form S-8, a short-form registration used to issue securities as part of an employee benefit plan, and Form F-3, a short-form registration statement filed by foreign issuers who meet certain requirements.  *Id.* ¶ 21. As of its May 19, 2022 and May 31, 2022 Form 6-Ks, Safe-T had ten active securities offerings.  *Id.* ¶ 22.  Given the materiality of the *Bright Data II* settlement (*see* Ex. X ¶¶ 28-46), Safe-T would be exposed to potential liability had it failed to make the challenged disclosures that were incorporated into its registration statement.  Ex. Y ¶ 22.

Safe-T would also be exposed to insider trading liability under Section 10(b) of the Exchange Act and Rule 10b-5 if it failed to make its challenged disclosures.  Section 10(b) and Rule 10b-5 "prohibit undisclosed trading on inside corporate information by individuals who are under a duty of trust and confidence that prohibits them from secretly using such information for

their personal advantage." *Salman v. U.S.*, 137 S. Ct. 420, 423 (2016).  Thus, if Safe-T's officers and directors bought stock at a deflated value, based on knowledge that Safe-T no longer faced the risks previously identified in the 2021 Form 20-F, they would be subject to insider trading liability since the investing public would not have also been aware of this material, non-public information. Ex. Y ¶ 25.  Safe-T's disclosures thus protected the Company from significant legal liability.

### C.    Safe-T's Press Release, Incorporated in its 6-K Filing, Conformed to a Standard Frequently Used by Public Companies, and Consistent With its Own Practice

Bright Data asserts that "under the securities laws, Safe-T has no obligation to issue a press release of any kind." Dkt. 178 at 3.  Bright Data is again wrong on the law.  A securities disclosure must provide information to investors through a method reasonably designed to effect broad, non-exclusionary distribution.  Ex. X ¶ 26; Ex. Y ¶ 29.  Public companies frequently achieve this objective by issuing a press release that is incorporated into their securities disclosure.  Ex. X ¶ 27; Ex. Y ¶ 29.  Reflecting this fact, since just 2020 Safe-T has followed this approach and issued a press release in connection with its Form 6-K disclosure at least forty times.  Ex. X ¶ 27; Ex. Y ¶ 29; Ex. Z (Safe-T 6-K Filings).  Thus, Safe-T's May 19 press release that was incorporated into its Form 6-K, announcing the settlement of *Bright Data II*, was not an attempt to "circumvent the confidentiality of the Settlement" as Bright Data contrives (Dkt. 178 at 3), but rather was consistent with Safe-T's established practice designed to ensure broad, non-exclusionary distribution to investors, as expected under securities law.

Safe-T's practice is also consistent with that of litigants in this District.  For example, upon settlement of its patent litigations, Network-1 (a publicly traded company) routinely issues a Form 8-K incorporating a press release which discloses the financial terms of the settlement agreement. Ex. AA.  Other litigants do exactly the same upon settling cases.  *See, e.g.*, Ex. BB (Finjan Security); Ex. CC (sampling of other such filings).

████████████████████████████████████████

**IV.    NO VIOLATION HAS OCCURRED, AND IF THE COURT FINDS DIFFERENTLY THE APPROPRIATE REMEDY WOULD BE AT MOST AN ADMONITION**

Because the protective order does not apply to the parties' settlement agreement, and ████████████████████████████████████████████████████████████████ there is no violation of the protective order.  No remedy is thus appropriate.  Should the Court disagree, however, several facts confirm that at most an admonition would be the appropriate remedy.

Rule 37(b)(2), which Bright Data relies on (Dkt. 156 at 10, 14), provides that "the court where the action is pending may issue further just orders," as well as several enumerated remedies. Fed. R. Civ. P. 37(b)(2).  Here, the evidence strongly shows Safe-T acted in good faith in an earnest practice to comply with securities law.  Safe-T's Form 6-K filing and incorporated press release—which contain all of the information Bright Data challenges—adhered to Safe-T's own established and customary practice of disclosing material information (Ex. Z), as well as to a widespread industry norm following exactly that format (Ex. AA, BB, CC).  Safe-T had no ill will toward Bright Data in making these securities disclosures, but rather a good faith interest in complying with securities law.  Ex. N ¶¶ 19-20; Ex. O ¶ 25. ████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████ Ex. DD at 3.

Moreover, ██████████████████████████████████ but has waived its ability to attempt such a showing.  The Court's Order on supplemental briefing required the parties to "serve on the opposite party a Notice that identifies evidence the party plans to offer in support of its supplemental brief as required by Fed. R. Civ. P. 26(a)(1)(A)(i)-(iv)."  Dkt. 182 at 1.  While Fed. R. Civ. P. 26(a)(1)(A)(iii) required Bright Data to disclose "a computation of each category

---

[2] NetNut explained that the "harm" arguments Bright Data raised in its motion make no sense, lack evidentiary support, and are wholly speculative.  Dkt. 168 at 15.

of damages" it claimed, all "documents or other evidentiary material" regarding damages, and all "materials bearing on the nature and extent of injuries suffered," Bright Data failed to make any disclosure under this provision.  Ex. GG.  Nowhere does Bright Data's notice even address alleged damages or harm.  *Id*.  Bright Data's failure to identify any cognizable harm not only disregards the Court's Order, but also warrants a finding of no sanctions.  *See Innovation Sciences, LLC v. HTC Corp.*, No. 4:18-CV-00476, 2020 WL 4536053, at *4-*5 (E.D. Tex. Aug. 6, 2020) (determining that sanction would not be in interest of fairness and justice in part because "Plaintiff has not shown how it has suffered substantial prejudice as a result of" alleged violation); *see also Paice LLC v. Hyundai Motor Co.*, No. WDQ-12-499, 2015 WL 13594450, at *2 (D. Md. May 5, 2015) (declining to find contempt for alleged protective order violation absent showing of "harm"); *Lookout Windpower Hldg. Co., LLC v. Edison Mission Energy*, No. 3:09-104, 2011 WL 13238016, at *3 (W.D. Pa. Feb. 22, 2011) (declining to issue sanction where, "even if we were to find that any of the three agreements cited above were produced in violation of the Protective Order, we would find that this production was in good faith, unintentional and reasonable under the circumstances."); *On Command Video Corp. v. LodgeNet Entm't Corp.*, 976 F. Supp. 917, 923 (N.D. Cal. 1997) (adopting Magistrate Judge's recommendation of no fine or attorneys' fees where claimant "failed to present a factual basis to substantiate the amounts requested").  Under these circumstances, where Safe-T demonstrably acted in good faith and to comply with securities law, and where Bright Data ███████████████ (including in response to the Court's Order, Dkt. 182), no monetary sanction would be appropriate.  At most an admonition would be appropriate as a "further just order[]" under Rule 37(b)(2)(A).

As NetNut disclosed (Ex. FF at 9), NetNut submits that it should be entitled to its reasonable attorneys' fees for having to respond to Bright Data's baseless motion (Dkt. 156), which Bright Data magnified through over-aggressive and wasteful filings (e.g., Dkt. 190, 191).

Dated:  July 14, 2022          By:     */s/ Eric H. Findlay*
                                      Eric H. Findlay (TX Bar No. 00789886)
                                      Debby Gunter (TX Bar No. 24012752)
                                      FINDLAY CRAFT, P.C.
                                      102 North College Avenue, Suite 900
                                      Tyler, Texas 75702
                                      Tel: (903) 534-1100
                                      Fax: (903) 534-1137
                                      Email: efindlay@findlaycraft.com
                                      Email: dgunter@findlaycraft.com

                                      Elliot C. Cook
                                      Denise A. Golumbaski
                                      David Lefcowitz
                                      Finnegan, Henderson, Farabow,
                                      Garrett & Dunner, LLP
                                      1875 Explorer Street, Suite 800
                                      Reston, VA 20190-6023
                                      Tel: (571) 203-2738
                                      Fax: (202) 408-4400
                                      elliot.cook@finnegan.com
                                      denise.golumbaski@finnegan.com
                                      David.Lefcowitz@finnegan.com

                                      Cory C. Bell
                                      Finnegan, Henderson, Farabow,
                                      Garrett & Dunner, LLP
                                      Two Seaport Lane
                                      Boston, MA 02210-2001
                                      Tel: (617) 646-1641
                                      Fax: (202) 408-4400
                                      cory.bell@finnegan.com

                                      C. Gregory Gramenopoulos
                                      Alissa E. Green
                                      Finnegan, Henderson, Farabow,
                                      Garrett & Dunner, LLP
                                      901 New York Ave.
                                      Washington, DC 20001
                                      Tel: (202) 408-4305
                                      Fax: (202) 408-4400
                                      c.gregory.gramenopoulos@finnegan.com
                                      alissa.green@finnegan.com

                                      Kevin D. Rodkey

16

Troy Viger
Finnegan, Henderson, Farabow,
Garrett & Dunner, LLP
271 17th St. NW
Suite 1400
Atlanta, GA 30363
Tel: (404) 653-6484
Fax: (202) 408-4400
kevin.rodkey@finnegan.com
troy.viger@finnegan.com

Randy Moonan
BurgherGray LLP
1350 Broadway, Suite 1510
New York, NY 10018
Tel: (917) 410-3152
Fax: (646)-459-4321
rmoonan@burghergray.com

***Attorneys For***
***Defendant NetNut Ltd.***

## CERTIFICATE OF SERVICE

Pursuant to Local Rule CV-5(c), the undersigned hereby certifies that all counsel of record who have consented to electronic service are being served with a copy of this document via email on July 14, 2022.

/s/ *Eric H. Findlay*
Eric H. Findlay

