IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| BRIGHT DATA LTD., § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | Case No. 2:21-cv-00225-JRG-RSP |
| § | |
| NETNUT LTD., § | |
| § | |
| *Defendant*. § | |

### MEMORANDUM ORDER

Before the Court is the Motion For Corrective Actions And Sanctions For Violation Of Protective Order And Abuse Of Settlement Process filed by Plaintiff Bright Data Ltd. **Dkt. No. 156**. In its motion, Bright Data seeks relief for alleged violations of the Court's Protective Order (Dkt. No. 58) committed by Defendant NetNut Ltd. and NetNut's counsel. On June 16, 2022, the Court heard arguments on Bright Data's motion and identified issues that required additional evidence and argument before the Court could rule on the motion. *See* Dkt. No. 182. On July 28, 2022, the Court held an evidentiary hearing, where both parties provided expert testimony, to hear evidence and argument on the issues identified at the prior hearing.

Turning to the facts, on May 15, 2022, the parties entered into a settlement agreement and the next day the parties jointly moved to dismiss the present case, which the Court granted on May 17, 2022. Dkt. No. 151. Two days later, on May 19, 2022, Law360 issued an article, entitled "NetNut Reaches No-Payment Settlement in Proxy Server Suit," which represented that the parties settled this case without a monetary payment and quoted NetNut's lead counsel, Elliot Cook. Dkt. No. 156 at 4. On the same day the Law360 article issued, Safe-T, NetNut's parent entity, filed a Form 6-K with the SEC that incorporated a press release issued by Safe-T containing similar disclosures.

1

Bright Data alleges that the information contained in the Law360 article and Safe-T's press release violated the Court's Protective Order and the confidentiality provision of the settlement agreement. In response, NetNut argues that Safe-T and NetNut were required by the securities laws of the United States to disclose the disputed information to the SEC and therefore, the disclosed information does not fall within the scope of the Protective Order or the settlement agreement. Dkt. No. 168 at 1.

Thus, in its motion, Bright Data argued two distinct bases for relief. One is the settlement agreement itself; the other is the Court's Protective Order (Dkt. No. 58). As to the former, the settlement agreement provides in ¶ 12 that a party may disclose its terms if "required by applicable laws (including governing securities matters), provided that the disclosing Party takes all reasonable action (including cooperating with the other Party) to restrict the public disclosure of such information *to the greatest degree possible*." Dkt. No. 156-2 at 3 (emphasis added). At the July 28 hearing, both securities experts agreed that a press release is not required by securities laws or regulations, making it very hard to credibly argue that NetNut's disclosure of the settlement terms was restricted to the greatest degree possible. However, the enforcement of ¶ 12 is committed to an arbitrator by ¶ 13 and not properly before this Court.

What is properly before this Court is the claim that the disclosure was a violation of this Court's Protective Order (Dkt. No. 58). The Protective Order provides that a party may designate as confidential for protection thereunder any document that includes confidential information. The provisions of the Protective Order continue to apply even after settlement of the lawsuit. Even if a document is covered by the Protective Order, information in it is not protected if it "becomes part of the public domain as a result of publication not involving a violation of this Order . . . ." Dkt. No. 58 at ¶ 5. To the extent that securities laws require disclosure of information, a good argument can be made that its disclosure does not violate the Protective Order.

Both parties offered expert testimony on whether Safe-T was required by securities laws to disclose the allegedly confidential information, and, of the two experts, Bright Data's expert, Robert Evans, was the more persuasive and credible. Indeed, even NetNut's expert testified that he agreed with the opinions of Mr. Evans. Based on the expert testimony, the Court finds that, for present purposes, only the following are required to be disclosed in a filing to the SEC: information needed to correct prior disclosures, changes to the financial condition of the business, or changes to business practices. If a settlement involved a payment or a change in business practices, it would also need to be disclosed by an appropriate filing to the SEC.

As to a no-payment settlement, the absence of a payment does not ordinarily need to be disclosed even though investors could infer that fact from the lack of any contrary disclosure. However, if a company's prior representations about the possible effect of a lawsuit on its business would have caused investors to have an unduly negative view of the company's financial condition, the company arguably would be required to disclose that the settlement did not require payment, in order to correct its prior disclosures. Bright Data's expert did not believe that was the case here, but the Court finds that it is a reasonable concern.

Assuming *arguendo* that the disclosure was not required by the securities laws, the question becomes whether the settlement agreement was subject to the Protective Order. That Order states in ¶ 2 that: "Protected Material shall be designated by the Party producing it by affixing a legend or stamp on such document, information, or material as follows: "CONFIDENTIAL." The word "CONFIDENTIAL" shall be placed clearly on each page of the Protected Material (except deposition and hearing transcripts) for which such protection is sought."

The settlement agreement at issue does contain the word "CONFIDENTIAL" as part of the heading on the first page, but it does not appear on the next 3 pages of the settlement agreement as required for designation under the Protective Order. The failure by Bright Data to designate the

document in the manner set out in the Protective Order creates a doubt as to its coverage, and NetNut established at the hearing that it had a reasonable basis for it to doubt that the settlement agreement was covered by the Protective Order. First, it is undisputed that there was no mention of the Protective Order by either party during the negotiation of the settlement. Second, the parties had a separate, and earlier, written agreement about the confidentiality of "any documents that are prepared or provided solely in connection with the Settlement Communications." (Confidentiality and Non-Use Agreement, dated August 5, 2021). Third, at no point did the parties discuss how to address the conflicting confidentiality provisions between the settlement agreement and the Protective Order. *See* Dkt. No. 194 at 5-7.

Absent these three facts, the Court would be inclined to find that the word "Confidential" was sufficient to invoke the coverage of the Protective Order. However, in this case the actions of the Bright Data in not appropriately labeling the document created a doubt which will be resolved against it under the circumstances of this case.

The parties have the right to expressly agree that documents that would ordinarily be covered by the Protective Order shall be covered under a different confidentiality regime. The parties have done so in this case by including very specific language in their settlement agreement. Whether NetNut has violated that agreement, and the consequences of a violation, have been expressly committed to arbitration. Accordingly, Bright Data's motion is **DENIED**.

**SIGNED this 11th day of August, 2022.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE